Garver *et al. versus* McNulty *et al.*

*Abandonment of Improvement Right.—What constitutes a Conveyance of Land.—Agreements executed and executory.—Parol Rescission of Agreement for Sale of Land.*

1. Where land, surveyed in 1794, was, more than seven years afterward, entered upon by a settler, and appropriated, the survey being then, and up to the year 1832, unreturned, it was *held*, that, by the failure to return the survey, the land was open to a new appropriation by settlement or otherwise, though the warrant upon which the survey was made, belonged to Nicholson, and the state lien depended upon his title.

2. A., owning a farm, agreed by written "articles of agreement," to convey it to B., in consideration of his covenants also expressed in the instrument, to support comfortably himself and wife during their joint lives, and to furnish them a house and garden upon another tract of land: each entered into possession of the land received from the other under the agreement, which was closed as a conveyance, by the grantor's acknowledgment of the receipt of the nominal consideration of one dollar. The operative words in the

[Garver *et al. v.* McNulty *et al.*]

instrument were words of present grant, nor was there, by expression or implication, any agreement or necessity for future assurance. After the death of the husband, in an action of ejectment to recover possession of the farm, for defect of compliance, it was *held* that the instrument was not executory upon the part of the grantors, but that it was a present conveyance of their title, and that their only remedy against the grantee, was upon his covenants therein, which were independent and executory.

3. Where, under the executed agreement, the possession of the farm had been at the time delivered and enjoyed for many years afterward, by the vendee, there could not be a *parol* rescission of the conveyance, so as to reinvest the grantors with title, without a violation of the Statute of Frauds.

ERROR to the Common Pleas of *Franklin county.*

This was an action of ejectment, brought January 12th 1860, by Margaret McNulty, Margaret Culbertson, and Eliza Rodgers against Jacob Garver, Samuel Garver, and James Fry, for a tract of land in Green township, Franklin county, containing about four hundred and forty acres, known as the " Southampton Iron Works Estate."

The plaintiffs are the heirs of Alexander Culbertson, deceased, whose widow was living at the trial, and had released her dower interest to the plaintiffs before the suit was brought.

Culbertson settled on this land some time before 1813, erected a house, set out fruit trees, made other improvements thereon, and made it his home until 1840, except for a short time after his dwelling had been destroyed by fire. In 1840 he removed to Southampton Iron Works, where he died in 1845. It was proven that there were fruit trees growing on the land in 1813 as thick as a man's arm, which Culbertson had planted when he first moved on the land.

The fire occurred in 1828, but the house was rebuilt and tenanted within nine months afterwards. The widow of Culbertson testified that up to 1840 this was the only place of abode of the Culbertson family, and that her husband adopted as his lines the boundaries of the surrounding surveys. The quantity of land cleared by him did exceed an acre. The widow also testified that he had the lines of his improvement run, and had a draft, which was destroyed in the fire. Other witnesses deposed that he had pointed out the lines to them, and told them not to cut timber beyond them. He never took any steps to obtain a title from the Commonwealth, or paid any part of the purchase-money, nor were any taxes paid for it by him or by his heirs, the plaintiffs in the ejectment.

On the 7th of July 1840, Culbertson and wife entered into an agreement with Charles Wharton, Jr., attorney in fact of Charles Wharton, who had made some claim to the property, by which, in consideration that Wharton would " support them comfortably during their lifetime, and furnish them with another house and garden in the same township, and also for the consideration of

[Garver *et al. v.* McNulty *et al.*]

one dollar," they agreed to relinquish the land to said Wharton, and sold to him all their right, title, and claim in and to the same. This agreement was placed for safe keeping with one Kintzer. Culbertson and wife then moved to the Iron Works as above stated. Wharton put a tenant in the house, which was soon after again destroyed by fire, and the improvement suffered to go down. Previous to this, some timber was taken from the land by Wharton, who supported Culbertson until his death in 1845, and his widow until about 1847, or employed his brother-in-law, McNulty, to do it, when he became insolvent; after which the agreement was taken up by Mrs. Culbertson, with the consent of Wharton. The plaintiffs therefore claimed the land as the heirs of Alexander Culbertson, to whom the title reverted by reason of the failure of Wharton to comply with the terms of the agreement.

The defendants claimed title, and made defence on several grounds.

1. They claimed under a warrant to John Mitchell for 400 acres adjoining John Nixon, dated March 24th 1794, but which was not executed until February 14th 1832, when a survey was made and returned, and was accepted March 25th 1832. This survey embraced the improvement claimed by Culbertson. The warrant belonged to the Nicholson estate, upon which the Commonwealth had a lien, the title to which finally passed to the Commonwealth. The agent appointed by the governor, under the Act of April 11th 1825, returned this land to the special board, by whom it was sold to Thomas Chambers, to whom a patent issued in 1833, and whose title by regular conveyance vested in Charles Wharton in 1840.

Wharton then mortgaged the property to the United States Bank, under which mortgage it was sold by the sheriff to George H. Thompson, who conveyed to P. J. Bujac. Bujac mortgaged the property to Joseph Swift, under which mortgage it was sold, in January 19th 1858, to Christian Bomberger, who conveyed it to Edward C. Dale, by whom, on the 1st of April 1859, it was conveyed to the defendants for $1600.

2. They claimed that the land was not open to settlement when Culbertson entered upon it, but that if it was he had abandoned it long before his death.

3. That Culbertson and wife, by their agreement of July 7th 1840, had conveyed all their right to the land to Wharton, to whose title they had succeeded.

4. That they were *bonâ fide* purchasers for a valuable consideration, without notice of the plaintiffs' claim, who, having failed to put the agreement of July 7th 1840 on record, cannot now recover.

The parties submitted the following points to the court, on which instructions to the jury were requested.

The court was requested by plaintiffs to charge the jury:

1. That the agreement of release from Culbertson and wife to Charles Wharton, Sr., if executed by Wharton, Jr., without written authority under seal, did not bind Charles Wharton, Sr., to perform the covenants therein contained; and if the grantee was not bound by his covenants, neither was the grantor.

2. That if said agreement was never delivered, the estate of Alexander Culbertson was never divested, and could not be, except upon a full compliance with the previous covenants and its delivery to the grantee.

3. That the payment of the purchase-money upon the warrant and survey, in the name of John Mitchell, covering Culbertson's improvement, enures to his benefit.

4. That if the conditions or covenants contained in the articles of release were never performed by Charles Wharton, Sr., the jury must find for the plaintiff.

The court was requested by defendants to instruct the jury as follows:

1. To give title by settlement, the jury must be satisfied from the evidence that Culbertson took possession of the land with the manifest intention of making it a place of abode, and the means (in part at least) of supporting a family, by the raising of grain and other esculents upon the land.

2. If the jury believe that Culbertson took possession of the land with the intention of making and acquiring a claim to it by settlement, and that he never made application to the Commonwealth for the land, paid no part of the purchase-money, and took no steps towards the perfecting of his title; and further, that in 1840 he left the land, and moved to the furnace where he died, and that since his death his heirs have made no effort to perfect said settlement right, then said right is lost by said laches and delay.

3. The location of a survey upon land occupied by another under a settlement claim, is not void, but only voidable by the settler; and if in this case the jury believe that the purchase-money was paid to the Commonwealth by those under whom the defendants claim, and that in 1832, or prior to that year, a survey was located upon the land in dispute, and a patent issued therefor; and that Culbertson acquiesced in this appropriation of the land, took no steps to perfect his settlement title, and that in 1840 he finally abandoned the land, then the right of the defendants under the warrant, survey, and patent became indefeasible.

4. If the defendants are *bonâ fide* purchasers of the land without notice of the plaintiffs' claim, and paid a valuable consideration therefor, the plaintiffs cannot recover.

[Garver *et al. v.* McNulty *et al.*]

5. The plaintiffs are estopped by the release dated the 7th of July, A. D. 1840, from recovering in this case.

6. After the lapse of twenty years, a sufficient written authority to Charles Wharton, Jr., to execute the release for Charles Wharton, Sr., will be presumed; and even if such act was unauthorized and therefore not obligatory upon Charles Wharton, Sr., still it would be binding upon Charles Wharton, Jr.

7. That by the articles of agreement made between Charles Wharton and Alexander Culbertson and wife, said Culbertson and wife gave up and surrendered to said Wharton all their title to the land in dispute, on certain terms; and if the jury believe from the evidence that Wharton, or any one for him, kept and performed his covenants with said Culbertson and wife, during the life of said Culbertson, and buried him when he died, all the title of said Culbertson in the land in dispute passed to said Wharton, and the heirs of said Culbertson have no title to, or interest in, the same; and that even if said Wharton did not fully comply with his contract in said articles, with regard to the widow of said Culbertson, the title in said Wharton to said land would not be thereby divested, especially if the jury believe that said widow agreed to take sixty dollars per annum from Wharton, in lieu of her maintenance and support agreed to be given her by said Wharton in said articles. And for a failure to comply with the last agreement, she would have an action upon the same against said Wharton.

8. The performance of the conditions mentioned in the agreement was not a condition precedent to the vesting of the title in Wharton.

9. If Charles Wharton, Jr., was acting as the agent of Charles Wharton, Sr., in making this purchase, he could not divest the title of his principal without authority to do so.

10. If the article of agreement was placed in the hands of Mr. Kinzer for safe keeping, the surrender of it by him to the widow of Culbertson, without the consent of Wharton, would not divest his title.

The court below, after stating the material facts, charged the jury as follows:

"[Inasmuch as no survey was made within seven years, on the warrant to Mitchell after it issued, it must be treated as abandoned as to intervening rights. The land was vacant as to Alexander Culbertson, if he went there as an improver, and the title to the warrant only began with the return of survey; and as the improver was then in possession, the warrant could confer no title, as against him, to the land. The holders of the interest of the estate of John Nicholson would step into his shoes, taking precisely his title and no more.

"If Culbertson was there as an improver when the warrant was executed, claiming to the boundaries of the surrounding warrants and surveys, having gone there and remained there with the purpose of making it his place of abode, and the means of supporting a family, then at the date of the survey he had the superior title to the land.

"The patent issued to Chambers would enure to him who had the right. Culbertson lived on the land some seven years after the date of the patent, and before he went to reside at the works. It is said that this was an abandonment of his claim, and that by this act a good title under the warrant became vested in Chambers, or Wharton, who held under him. If Culbertson lived on the land from 1800 to 1840, there was no abandonment up to this last date; and if he was induced to leave the premises under the articles of agreement produced, then it will not lie in the mouth of Charles Wharton, Sr., or those who claim under him, to say that he abandoned the improvement within the meaning of our decisions.] That agreement has been read. The plaintiffs' counsel say that it is an executory contract, and that Wharton, and those who hold under him, having never complied with the conditions, it will not avail the defendants as a defence; whilst the defendants' counsel insist upon it that it is a deed of conveyance of the whole interest of Culbertson in the land, accompanied by a delivery of possession; and that therefore the plaintiffs cannot recover.

"If the evidence of the widow is believed, Charles Wharton, Sr., furnished her husband and herself with a house to live in, and such articles as were agreed on, up to the death of Alexander Culbertson, in 1845 or 1846, but thereafter he neglected or refused to comply with the contract, in making provision for her support. Some conversation was held between herself and Wharton, Jr., on the subject. She remonstrated with him for the non-compliance, and it seems that Wharton finally made an arrangement with McNulty to pay $60 per annum for her support to him, in quarterly payments. She says he paid a few small sums, and then refused altogether, and told her to go and take the land again. She left him, and went to Kinzer to get the agreement. For the last fourteen years she has had her support elsewhere. The title passed away from Wharton to other persons, and they seem to have had no knowledge of this agreement."

The plaintiffs' points answered were as follows:

"1st. There is no *express* evidence that Charles Wharton, Sr., ever ratified the agreement made by Charles Wharton, Jr. But it seems that Culbertson and wife lived under it at the works for some five years. It will be for the jury to say, under all the

[Garver *et al. v.* McNulty *et al.*]

evidence in the case, whether the contract was made by his direction and authority, and if not, whether he afterwards ratified it. It is scarcely possible to escape the conviction that it was received with his sanction.

"2d and 4th. The paper, we instruct you, is an executory contract. If it was executed by the parties, it required no formal delivery as in the case of a deed. Making Kinzer the custodian of it did not change the nature of the contract. If you find that the agreement was the act of Charles Wharton, Sr., and that the covenants were not complied with by Wharton within a reasonable time, the agreement cannot be set up as a defence here, and if the terms of the agreement were not complied with for fourteen years, we instruct you that such neglect is unreasonable.

"These covenants were made for the benefit of Mary Culbertson, after her husband's death. She had the right to release them. Did she do so? If she did, then the defence is sustained. Did she agree to take the arrangement with McNulty in lieu of the rights secured to her by agreement? If she did, then there can be no recovery."

3d. Was answered in charge.

The defendants' points were disposed of thus:—The 1st, 9th, and 10th were affirmed; the 2d and 4th were negatived. For answer to the 3d, 5th, 7th, and 8th points, the jury were referred to the general charge, while the matter referred to in the 6th point was presented, as a question of fact, for the jury.

There was a verdict and judgment in favour of the plaintiffs, whereupon the defendants sued out this writ, and assigned for error:

1. That the court below erred in answering defendants' second point in the negative.

2. In answering defendants' third point as was done in the general charge, enclosed in brackets.

3. In not affirming defendants' fourth point.

4. In answering defendants' fifth point as was done in the general charge, enclosed in brackets.

5. In answering defendants' seventh point as was done in the general charge. The error assigned to this answer of the court was, that the instruction given was not broad and full enough to embrace all the propositions in the point, and was not explicit enough for the proper understanding of the jury.

6. In not affirming defendants' eighth point.

*Reilly* and *Sharpe*, for plaintiffs in error.—1. The land in controversy was not open to settlement at the time Culbertson entered upon it. In 1800, there were two judicial and two fiscal liens upon it, as part of the Nicholson estate, the validity of

[Garver *et al. v.* McNulty *et al.*]

which was settled by Smith *v.* Nicholson, 4 Yeates 8; Livingston *v.* Moore, 7 Peters 469. Nicholson was then the equitable owner, and although there was no survey until 1832, none but the Commonwealth could take advantage of the laches of the warrant-holder until the right of some third person intervened: Orr *v.* Cunningham, 4 W. & S. 298.

. The lien of the Commonwealth bound this land when Culbertson settled on it. The title of defendants is based on a compromise by the "special board," constituted for enforcing this lien; goes back to the date of that lien, and is in effect exactly what Nicholson had when it attached, viz. the equitable estate acquired by payment of purchase-money, surveying fees, and location of warrant, unaffected by the non-return of survey, for the reason above given, or by Culbertson's improvements: Act of 1807, § 2.

No abandonment by Nicholson can be presumed from the omission to return the survey; a close examination of the cases on this subject, will show that there is no such presumption, where the purchase-money and surveying fees have been paid, and the warrant located so that the junior claimant has notice of a previous appropriation from the marks on the ground: Eddy *v.* Falkner, 3 Yeates 580; Pijou *v.* Nevill, 4 Id. 266; Keble *v.* Arthurs, 3 Binn. 26; Adams *v.* Jackson, 4 W. & S. 55; Mix *v.* Smith, 7 Barr 77; Baker *v.* King, 6 Harris; Roland *v.* Long, 1 Id. 464.

2. If the land was open to settlement when Culbertson entered, he did not pursue his right with proper diligence; his possession was not of such a character, nor was it continued as the law requires. Although settlement rights are highly favoured, yet the law requires the settler to perform certain duties, such as defining boundaries within seven years, keeping up a residence until his title is perfected: Howard *v.* Pollock, 1 Yeates 512; Bennett *v.* Devebaugh, 3 Binn. 187; Smith *v.* Oliver, 11 S. & R. 221; Buntlinger *v.* Hutchinson, 1 Watts 46; Farmers' and Mechanics' Bank *v.* Woods, 1 Jones 117; Ross *v.* Pleasants, 7 Harris 157.

The charge of the court below was not up to the doctrine of these decisions. Nor was there evidence of a continued residence. Since the fire it has been entirely abandoned by the representatives of Culbertson.

The true definition of a legal settlement is to be found in the Act of December 3d 1786: Clark *v.* Hutcher, 3 Yeates 269; Act of September 22d 1794; Watson *v.* Gilday, 11 S. & R. 340.

Seven years' absence is conclusive evidence of an abandonment under these acts, which nothing short of prevention by physical force, or a call to the defence of the country, will excuse: Atcheson *v.* McCulloch, 8 Watts 13; McDonald *v.* Mul-

[Garver *et al.* v. McNulty *et al.*]

hollan, 5 Id. 173; Stockwell *v.* Robinson, 1 Barr 477; Farmers' and Mechanics' Bank *v.* Woods, 1 Jones; Sample *v.* Robb, 4 Harris 305; Jacobs *v.* Figard, 1 Casey 45; Smith *v.* Beck, 1 Id. 106; Pfoutz *v.* Steel, 2 Watts 412. This case is like none of these. Culbertson's abandonment was his own voluntary act, and it lasted for nineteen years, without complaint. If the contract with Wharton was only executory, as is said, it should have been rescinded, the residence resumed, on Wharton's failure to comply with its terms, and a title procured from the state. The patent taken out by Chambers, cannot enure to the benefit of Culbertson's heirs, if their equitable title has been destroyed. The Act of 1825, establishing the "special board," requires all persons in possession of land on which the Commonwealth have a lien, to apply, within two years, for a compromise and a purchase, which plaintiffs never did, but saw it done by Chambers, without objection.

4. Plaintiffs, or their ancestors, acquiesced in the appropriation of this land to the Mitchells' warrant, survey, and patent, and in the purchase by Chambers from the Nicholsons.

The location of a survey upon land, occupied by another under a settlement claim, is only voidable by the settler, who may acquiesce: Cresson *v.* Miller, 2 Watts 272. See also 5 W. & S. 284; 1 Jones 113. In this case, Culbertson, knowing that in 1832 there was a survey on his improvement, and a patent issued therefor, acquiesced by taking no steps to perfect his title, and by abandoning entirely in 1840.

5. The agreement of July 7th 1840 was not executory, but an absolute conveyance of the interest of Culbertson and wife to Wharton, whose title we hold, under which possession was delivered to the vendee, and the plaintiffs were thereby estopped. The court below construed the agreement to be executory, or under the authority of Williams *v.* Bently, 3 Casey 594; but the cases are essentially different—the instrument here being, in all its terms, a present conveyance.

The intention to convey is manifest, and it is the intention which governs in such cases: Jackson *v.* Myers, 3 Johns. 387; Weaver *v.* Jenkins, 2 Yeates 107; Sherman *v.* Diehl, 4 Id. 295; Kenrick *v.* Smith, 7 W. & S. 41; Williams *v.* Bentley, 3 Casey 301; Ogden *v.* Brown, 9 Id. 249; 1 Whart. 303; 9 W. & S. 67; 7 Id. 41; 10 Casey 180.

Even if it were executory, his estate in the land was divested by the performance of the stipulations of the bargain, and there remained only a right of action for the widow to recover their value while they were withheld. This point was not fully answered by the court below.

3 Wr.—31

[Garver *et al. v.* McNulty *et al.*]

6. The defendants were *bonâ fide* purchasers for value, without notice of plaintiffs' claim. The conceded facts in the case establish this, and so the court should have held.

There were no signs of a settlement on the ground, and this agreement never was on record, although embraced in the recording acts : 3 W. & S. 334. A sheriff's vendee is not affected by any secret trusts : Smith *v.* Painter, 5 S. & R. 223 ; Swartz *v.* Moore, 5 Id. 257 ; Stewart *v.* Truman, 10 Harris 120 ; Hathrington *v.* Clark, 6 Casey 393 ; Russell's Appeal, 3 Harris 319 ; McCormick *v.* McMurtrie, 4 Watts 155. See also the cases in 2 Watts 75 ; 5 W. & S. 285 ; 6 Id. 469 ; 2 Watts 259 ; 1 Jones 399 ; 4 Harris 220 ; 1 Id. 636 ; 10 Barr 283 ; 10 Watts 13 ; 7 Id. 385 ; 9 Id. 508 ; 8 Id. 490 ; 8 S. & R. 495 ; and 3 Casey 172.

*John Cessna* and *J. W. Douglass,* for defendants in error, disposed of the three first and the sixth positions of defendants' argument, by referring for answer to them, to the opinion of Justice Woodward in the case of Schall *v.* Williams Valley Railroad Company, 11 Casey 191. As to the article of agreement of July 7th 1840, they argued that as it was offered on the trial by the defendants below, they are bound by it, and cannot deny that they had notice of its contents. The plaintiff's title was complete without it—defendants offered the paper to destroy that title ; they cannot, therefore, claim to be benefited by it, and, at the same time, avoid the responsibilities and liabilities which are connected with it.

If this instrument is a deed, as is said, it was invalid for want of delivery : Hannah *v.* Swarner, 8 Watts 9. The court below ruled that it was an executory agreement, and were right in this : Stauffer *v.* Coleman, 1 Yeates 393 ; Stoebel *v.* Trout, 3 Watts 165 ; Bear *v.* Whistler, 8 Id. 144 ; 1 Story on Contracts, § 18 ; 2 Parsons on Contracts, p. 37. Beside this, it was rescinded by Mr. Wharton by parol, which was sufficient : Boyce *v.* McCulloch, 3 W. & S. 432 ; Dayton *v.* Newman, 7 Harris 198. His interest under it was lost by his breach of its conditions : Hamilton *v.* Elliott, 5 S. & R. 375 ; Beer *v.* Whistler, 7 Watts 144 ; Westenberger *v.* Reist, 1 Harris 594. His vendees cannot now enforce a contract which he violated and abandoned : 1 Parsons' Eq. 484 ; Zigler *v.* Henry, 1 W. & S. 533.

The plaintiffs below have cause to complain of the court for refusing to affirm their first point. As there was no evidence to show that the elder Wharton, who lived in Philadelphia, ever authorized or assented to the contract, it lacked mutuality, without which it was not binding : Vanhorne *v.* Frick, 6 S. & R. 90 ; McDowell *v.* Simpson, 3 Watts 129 ; Parrish *v.* Koons, 1 Parsons 89 ; Twitchell *v.* City, 8 Casey 220.

The opinion of the court was delivered, June 5th 1861, by

THOMPSON, J.—1. We need not discuss the first three assignments of error. We think the law of the learned judge there complained of, was entirely accurate, and adequate to that part of the case. More than seven years after the survey was made, and while unreturned, Culbertson entered on the land in controversy as a settler. The failure to return the survey from 1794 to 1832, left the land open to new appropriation, by settlement or otherwise. There are numerous decisions to this effect, which need not be cited. Nor was this principle changed by the fact that the warrant belonged to Nicholson. The state lien depended on Nicholson's title. If he acquired none, the state could have no lien. This was equally so, whether he failed to locate his warrant or to return the survey.

2. The fourth assignment requires more consideration. Was the writing of the 7th July 1840, between Culbertson and wife of the one part, and Charles Wharton, Sr., by his attorney, of the other, an executed or an executory contract on part of the former? It will scarcely be doubted but that such may be the case in regard to one party, and not as to the other: the effect of which would in general, in case of a sale of real estate, be to turn the vendor round to his covenants to enforce performance of anything remaining to be done by the grantee. He could not use his title to enforce conditions, for that would be gone by the conveyance. This is plain.

The instrument of writing here claimed to be a conveyance by the defendants, recites possession of the land by Culbertson, a claim by Wharton, and a lawsuit between him and Culbertson's tenant, Lindsay; and that the "said Alex. Culbertson is desirous of settling all controversy in relation to the same," and rescinding his agreement with Lindsay. The "said Alexander Culbertson," the instrument proceeds to say, "doth covenant and agree, that, in consideration of himself and Mary his wife being supported comfortably during their natural lifetimes, by the said Charles Wharton, which said Charles Wharton is also to furnish the said Alexander Culbertson with a house and garden in said township, on another tract of land, that the said Alexander Culbertson will immediately relinquish the possession of said tract of land to the said Charles Wharton, Sr., and the said Charles Wharton, Jr., on behalf of the said Charles Wharton, Sr., doth covenant to provide for the said Alexander Culbertson and Mary, said house and garden, and to furnish them the means of living comfortably during their natural lives, in consideration whereof and of the sum of one dollar to her and the said Alexander Culbertson in hand paid, the said Alexander Culbertson and Mary his wife have granted, bargained and sold, released and con-

firmed, and by these presents do grant, bargain and sell, release and confirm unto the said Charles Wharton, Sr., his heirs and assigns, all the right, title, and claim of them, the said Alexander Culbertson and Mary and their heirs, to the said described tract of land. In testimony," &c.

I have quoted this instrument thus at large, to show, at one view, the consideration, the terms of present grant, and the entire absence, by expression or implication, of any agreement or necessity for further assurance. The consideration was the covenants for maintenance; and to close the instrument, as a conveyance, the nominal consideration of one dollar in hand paid was acknowledged. If the instrument was delivered, as it seems to have been, it is difficult to see why its operation is not, so far as the grantors are concerned, to be that of a complete conveyance. That it was signed by both parties, in no particular changes its effect as a conveyance. It was so done, doubtless, to afford a remedy on the covenants for maintenance, which otherwise could not have been enforced by action of covenant. And for the same reason was it deposited or delivered to a third party for safe keeping. By this means it would be kept within the convenient reach of the grantors who were interested in these covenants. This circumstance did not give it the character of an escrow. The only condition precedent to be performed by the grantee was performed, namely, the furnishing a house and garden for the grantees at another place; and they surrendered the possession of the premises. The grantee, during the lifetime of Culbertson, complied fully with his covenants, as we would learn from the testimony; and the defect of compliance seems to have occurred in regard to his widow, after her marriage to Leonard perhaps. But on the point under consideration, this could make no difference; for if the instrument was a present conveyance, it passed the grantor's title to the land, and henceforth the covenants in their favour were their only security.

In Grey *v.* Packer, 4 W. & S. 18, the doctrine on the point under consideration is well stated by Sergeant, J. He says:— " In all the cases cited where the instrument has been construed executory, although some of the words imported a present grant, yet there were other clauses, by which *something further was to be done*, or which showed it to be the design of the parties, from the tenor of the whole instrument, that it was to be merely executory." Williams *v.* Bently, 3 Casey 294, turned on the construction given to the article that future assurance was to be made. So also did the case of Ogden *v.* Brown, 9 Casey 247. As a general proposition, this intention appearing, will control words of present grant, and this upon the principle that the intention of the parties must interpret their agreements. In none

of the cases are the words "articles of agreement," at the beginning of the instrument, held to be of controlling effect in indicating an executory contract. They yield to the force of the operative words of the instrument and the intent of the parties afterwards expressed. The substance of the contract, not its mere form, is to control. On this point in the case, we are brought to the conclusion that the contract of sale was executed on the part of Culbertson and wife, and the covenants on the part of the grantee were independent and executory, and that there was error in construing the instrument to be an executory agreement on part of the vendors, Culbertson and wife, as well as on Wharton's part.

Under this view of the transaction, the law will not sanction the position insisted on by the plaintiffs below, that there was a parol rescission of the conveyance. Under the circumstances of this case, the possession having been delivered, and long enjoyed by the vendee, it could not be done, so as to reinvest the grantors with title, without a palpable violation of the Statute of Frauds and Perjuries: a reconveyance, or some substitute for it, would be required to have the effect. No doubt but that unexecuted articles for the sale and purchase of land may be rescinded by parol, so that in equity no specific execution of them could be enforced, or a recovery be had in ejectment: Boyce *v.* McCullough, 3 W. & S. 432; Dayton *v.* Newman, 7 Harris 198. But when the title has passed, a different rule necessarily exists. All the court charged, therefore, predicated of the construction that the writing between the parties, so far as the grantors were concerned, was executory, was in our view of the case erroneous; and this disposes also of the fifth and sixth assignments of error.

For the reasons thus given, the judgment must be reversed.

Judgment reversed, and a *venire de novo* awarded.