# Henry, Appellant *v.* Black.

210 245
213 ²429
s213 622
e 29 SC ²250

*Equity—Bill in equity—Pleading.*

A bill in equity should be a simple statement of the essential facts of the case.

*Statute of frauds—Memorandum in writing—Description of property—Hotel.*

A receipt in writing for a portion of the purchase money of a hotel property, which specifically designates the hotel by name, is a sufficient memorandum in writing within the statute of frauds, inasmuch as the naming of the hotel fixes its site, and the city and county records establish the boundaries and quantity of the land.

*Equity—Specific performance—Vendor and vendee—Corporations—Fraud.*

On a bill in equity for specific performance it appeared from the pleadings that the treasurer of a corporation with authority from his company took an option in his own name to purchase real estate, the seller agreeing to pay the company a large fee. The treasurer subsequently sold the property giving a receipt in the name of the corporation to the purchaser for a portion of the purchase money. Thereafter the treasurer took a conveyance of the property in his own name and immediately executed a deed to a third person who had knowledge of the prior transactions, and who also agreed to pay a fee to the corporation. It appeared that the business of the corporation consisted of dealing in real estate and taking options. No express written authority was given to the treasurer as to the transaction in question. *Held,* (1) that no written authority to the treasurer from the corporation was necessary; (2) that the facts disclosed a fraud upon the first purchaser; (3) that specific performance in favor of the first purchaser could be enforced against the original owner, the corporation, the treasurer and the second purchaser.

Argued Oct. 25, 1904. Appeal, No. 115, Oct. T., 1904, by plaintiff, from decree of C. P. No. 2, Allegheny Co., July T., 1903, No. 585, dismissing bill in equity in case of D. F. Henry, and Annie E. Henry, his wife, in right of Annie E. Henry v. Sarah Black, The Union Realty Company, Robert J. Coyle, Jr., and Andrew W. Mellon. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Bill in equity for specific performance. Before SHAFER, J. Demurrer to bill.

The material averments of the bill are set forth in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Wm. A. Stone*, with him *Stephen Stone*, for appellants.—There is a mutuality between Mrs. Henry and Sarah L. Black, because the option is to Robert J. Coyle, Jr., his nominees or assigns: Kellow v. Jory, 141 Pa. 144.

The courts in Pennsylvania have always enforced options on bill by decrees of specific performance : Dalzell v. Imblum, 32 P. L. J. (N. S.) 138.

Where one purchases and takes a deed for part of a tract of realty, with knowledge of a previous option in a third person, the former will be compelled to convey to the latter on bill for specific performance against the former and the vendor in the option: Hamory v. Sargent, 25 Pa. County Court Rep. 191.

It is well settled that the principal is bound by the act of his agent within the scope of his authority that he is held out to the world to possess, even notwithstanding the latter acted contrary to instructions : McNeile v. Cridland, 168 Pa. 16.

The holder of an option has the right to specific performance when the vendor has subsequently sold: Baum et al. v. Dubois, 43 Pa. 260.

A demurrer cannot be sustained to a bill for specific performance where the statute of frauds is alleged as a defense : Ralston v. Ralston, 23 P. L. J. (N. S.) 254; In re estate of Wm. Breitenstein, 23 P. L. J. (N. S.) 255.

*Henry A. Davis*, with him *Reed, Smith, Shaw & Beale, S. S. Mehard* and *Ralph Longenecker*, for appellees.—The statute of frauds applies to an equitable as well as a legal title : Shoofstall v. Adams, 2 Grant, 209.

A direct oral agreement to purchase as the agent of another will not, in the absence of fraud or the payment of the purchase money by the principal, create a trust: McCall's Appeal, 11 Atlantic Reporter, 206 ; Fogel v. Schall, 2 Central Reporter, 530.

The statute of frauds requires the authority of an agent to sell lands to be in writing : Lewis v. Bradford, 10 Watts, 67.

OPINION BY MR. JUSTICE DEAN, December 31, 1904:

This is a bill to compel the specific enforcement of a contract for the sale of land. The bill of complainants is met by a demurrer in which defendants aver: (1) That the bill does not set out sufficient facts to make it cognizable in a court of equity. (2) That it does not set out sufficient facts to entitle plaintiffs to the relief prayed for. (3) The bill does not set out any contract in writing, nor any contract enforceable specifically in a court of equity.

The bill should be a simple statement of the essential facts of the case: Winebrenner v. Colder, 43 Pa. 244.

The facts averred in the bill are these: That Sarah L. Black, one of the defendants, on January 7 and for years prior thereto was the owner in fee simple of a lot of ground on the corner of Smithfield street and Virgin alley in the city of Pittsburg, known as the Hotel Duquesne property; that plaintiffs owned the Hotel Henry property adjoining the Hotel Duquesne; the Union Realty Company is engaged in the business of buying and selling on commission the property of owners; on May 7, 1903, Sarah L. Black gave to R. J. Coyle, stockholder and treasurer of the Union Realty Company, and to his nominee and assigns an option for thirty days on the Hotel Duquesne property at the price of $800,000 payable $25,000 cash, the balance $775,000 to be secured by bond and mortgage for ten years bearing interest at four per cent payable semiannually; Sarah L. Black agreed to pay the Union Realty Company $10,000 if sale was made. Coyle and one John K. Ewing, a director of the company, then sold to Annie E. Henry the Hotel Duquesne property on June 1 following, within thirty days, at the exact price specified in the option of Mrs. Black to Coyle, but substituting as the vendor the Union Realty Company. This is a copy of the writing delivered to Mrs. Henry:

" June 1st 1903. Received from Mrs. Annie E. Henry five thousand dollars ($5,000) hand money on account of sale of Hotel Duquesne property as per agreement made this day.

(Signed) " UNION REALTY COMPANY

" $5,000 Per J. K. EWING."

The negotiations for the sale were made and carried on by and through Ewing and Coyle; the $5,000 named in the re-

ceipt or contract was paid them; the plaintiffs on June 5, 1903, within five days, tendered to Sarah L. Black $25,000 in cash and a purchase money mortgage payable with interest as stipulated in her option and demanded a deed; she refused to accept the money or deliver a deed; in five days after filing this bill and ten days after plaintiffs tendered to her the cash, mortgage and bonds, Mrs. Black executed and delivered to Coyle a deed for the property, received from him the $25,000 cash with the mortgage and bond in the sum of $775,000; the same day Coyle executed to A. W. Mellon his deed for the property for the consideration agreed to be paid by Mrs. Henry to the Union Realty Company. Mellon took the deed with the full knowledge of the previous negotiations and transactions between Coyle and Mrs. Black, and between Coyle, Ewing, the Union Realty Company and Mrs. Henry. The Union Realty Company received from Sarah L. Black $10,000 commissions on the first sale of the property to Mrs. Henry; either the company or Coyle for the company received an additional commission from Mellon for the sale of the property to him.

These are the facts averred, either within the knowledge of plaintiff or on information and belief. The defendants have only demurred, therefore we must take them as true, at least so far as concerns the issue raised by this appeal. Then, as a fact, the Union Realty Company did declare to D. F. and Annie E. Henry, that it was the owner of an option with the power to sell the Hotel Duquesne property and made a sale in writing signed by it of property to Mrs. Henry, who made a payment of $5,000 down, which the company by its agent received. The bill avers the full price was to be $800,000; the writing states that the $5,000 was on account of sale of Duquesne Hotel property as per agreement made this day. This was not, as appears from the receipt, a very explicit statement of the full consideration, for when bill and receipt are read together the consideration was much larger and the method of payment was fully set out and agreed upon. The demurrer, in effect, admits the contract in all its details. But aside from the full averments in the bill, which are not part of the receipt, we have a writing reciting a sale of a specific property, identifying it by name, and an actual payment of $5,000 of the consideration. If the description was sufficiently certain, this was

a complete contract between the Union Realty Company to sell the Hotel Duquesne property and on the part of Mrs. Henry to buy it at a price exceeding $5,000. Was the description sufficiently certain? The hotel was a prominent one, on one of the principal streets of Pittsburg; probably three fourths of the citizens of Pittsburg know its exact location. But that, under the authorities is not sufficient; is the description in the writing full enough to enable a court to make a decree of specific performance of the contract? The identity of the location is fixed by the name of the hotel. Given the hotel site, the lots on which it stands and the ground properly appurtenant to it, can be ascertained by measurement to a certainty. Our records in rural counties are full of deeds which describe thousands of tracts of land conveyed only by their warrantee names; no one thinks of objecting to them for insufficiency of description; if a dispute arises a survey identifies their location; a copy of the official survey from the land office establishes their exact boundaries and quantities of land. So here, the identity of the hotel site being fixed, the city and county records establish the boundaries and quantity. This contract then clearly identified the subject of it; that identification furnished the purchaser or a court the means of making clear the boundaries and quantity of land. This, since Wilson v. Clarke, 1 W. & S. 554, and especially since McFarson's Appeal, 11 Pa. 503, which gave authoritative interpretations of our statute of 1772, as compared with the British statute of frauds, has been held a sufficient memorandum in writing to escape the inhibition of the statute of frauds and such has been the ruling in the long line of cases since the decisions in these two cases. What was said of the contract in the last named case may be said of the one in this : " It is in writing, is sufficiently certain and defined in every required particular inclusive of the question of estate to be conveyed, was made by parties able to contract upon a valuable consideration and imports to be fair and equal. Why should it not then be executed? "

Up to this point, then, these facts distinctly appear as averred in the bill, that the Union Realty Company, professing to be the owner of the Hotel Duquesne property, sold it by a memorandum in writing to the plaintiff. It is further averred that Mrs. Black, the original owner, had on May 7,

1903, given to R. J. Coyle, Jr., a full and complete written option for the sale of the property at the price of $800,000, of this $25,000 was to be cash and the balance, $775,000 was to be paid in ten years, with interest at four per cent to be secured by bond and mortgage upon the property. The option was to continue for thirty days. Coyle was a stockholder, treasurer and employee of the Union Realty Company. Sarah L. Black further agreed with the Union Realty Company, through its officer and employee Coyle, to pay to the company a commission of $10,000. The conveyance of the property, by the option, was to be made to Coyle or to his nominee or assigns. It will be noticed by paragraph IV of the amendment to the bill, it is averred, that Mrs. Black agreed with the Union Realty Company to pay to it this $10,000 as commission for the sale of the property at the price named; further in paragraph III it is averred, in substance, that the realty company authorized its employees in the transactions of its business to obtain options. The averments in the bill, although unskillfully if not carelessly drawn, yet show clearly enough to be obvious, that Coyle took the option for the corporation of which he was a stockholder, officer and employee. Coyle and Ewing, the latter a stockholder and director in the company, then with Mrs. Black's option in their possession representing the property as that of the Union Realty Company, opened negotiations with Mrs. Henry, the plaintiff and purchaser of the hotel. Mrs. Henry agrees to buy at exactly the same price as that stipulated for by Mrs. Black in her written option. A memorandum in writing is made as heretofore quoted signed by the Union Realty Company. It will be noticed that paragraph IV of the bill avers that Coyle, Ewing and the realty company approached Mrs. Henry and offered to make sale to her of the property specified by Mrs. Black in her option to Coyle or his nominee, and the written receipt showing the sale made by them is signed by the realty company.

We must take the facts as here averred, whatever inferences are reasonable and obvious we must draw. We do not demand of a pleader that he shall express every obvious inference necessarily to be drawn from plain facts. A man with his senses of sight and hearing unimpaired who goes in front

of a moving railroad train, we infer is negligent; the facts are susceptible of no other reasonable inference. Here Coyle was an officer transacting business for the realty company; he takes this option from Mrs. Black in his own name, a conveyance to be made to him or his nominee within thirty days. She agrees to pay the company a fee of $10,000, what for?

The answer is an obvious inference—for making the sale at the option price. Coyle and Ewing, both officers of the company representing it to be for the optional period the property of the company, by a writing sell to Mrs. Henry. Whose property is it? Clearly that of the company for that from the writing is the obvious inevitable inference. Suppose Coyle and Ewing had claimed after the sale to Mrs. Henry the property was theirs as individuals and did not belong to the company, would a court of equity have hesitated one minute on these facts to decide the property was that of the company when Mrs. Henry bought? That the option, although in the name of Coyle, was merely held by him as trustee for his company? Mrs. Black, it appears, refused to execute a deed to Mrs. Henry when the latter formally tendered performance of all the stipulations of the option; she did however in a very few days convey the property to Coyle; on the same day Coyle conveyed it to Mellon, and in addition to the $10,000 commission received from Mrs. Black, received, either for himself or his company, another fee from Mellon.

The facts averred in the bill are sufficient to induce a court of equity to declare Coyle a trustee of the equitable title in favor of the Union Realty Company, and that the rights of that company passed to Mrs. Henry by writing of June 1, 1903. If Mrs. Black still held the legal title, equity would compel her to convey either to Coyle or the realty company and one or the other of them to convey to the plaintiff. She had however conveyed to Coyle; of course he is affected with notice of the fraud attempted to be practiced on plaintiff and if he still held the title would be ordered to convey to plaintiff. But he conveyed to A. W. Mellon, another of the defendants, who it is averred had full notice of all the transactions and all the conduct of the parties up to and including the sale to plaintiff. If that be so he holds it subject to the same trust, and the strong arm of a chancellor will reach

him as effectively as it could have reached Coyle had he retained the legal title.

The statute of frauds does not protect a fraud of that character. That a corporation which can only conduct its business by and through its officers and employees, must show, whenever called upon, a written authority to that officer to do that particular act; and when that officer acting for the company executes a written contract by which the corporation is to receive the benefit of the first act performed by its officer before it can be held up to that contract must show a written authority, would be to stretch the inhibition of the statute far beyond anything contemplated by its framer.

Much stress is laid in the argument of defendants' counsel on the entire absence of any writing showing that Coyle was the agent of the Union Realty Company in the transactions. But the business of the company was to take options for the sale of real estate ; Coyle was one of its officers and employees employed in conducting its business ; when he took the option from Mrs. Black she agreed to allow his company a commission of $10,000 on a sale at the optional price ; with Mrs. Black's written option Coyle and Ewing offer the property for sale at Mrs. Black's price to Mrs. Henry; she accepts and the Union Realty Company, not Coyle, sells to her; within a very few days Coyle, in the face of the written contract of his company to sell to Mrs. Henry which he assisted in making, sells the property for an additional fee to himself to Mellon. What clearly results from these facts ? A trust in Coyle in favor of his company, a palpable trust ex maleficio. It is immaterial that the realty company is not here asserting the trust in this suit; it asserted its title under the right which came to it through Mrs. Black's option ; by its written contract of sale to Mrs. Henry. All its rights passed by that sale to her and she can effectively assert them in spite of the quiescence of the realty company. And if Mellon took his deed from Coyle with notice of Coyle's mala fides, he is but a trustee of the title for the first purchaser Mrs. Henry.

The learned judge of the court below held, in his opinion on the exceptions, not apparently with much confidence, that this contract was within the statute of frauds; we hold differently. Our first impression on the argument was, that it

was only one of those sharp business transactions, which however reprehensible in itself, the moving spirit was cunningly careful to keep within the law so that he might make double fees, but a more careful consideration of the averments of the bill and of the law applicable to them, leads us to the conclusion that a much stronger adjective than " sharp " would properly characterize it. Exactly at whose door the fraud lies or to what extent each must share the consequences of it we cannot now determine. Our inability to so determine at this stage of the case, moves us to only reverse the decree, order the bill to be reinstated and direct defendants to answer over.