(No. 19514.—■■■■■)
FRANK J. POTTER, Defendant in Error, *vs.* THE FON DU LAC PARK DISTRICT, Plaintiff in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 10, 1929.*

W. J. REARDON, (WILLIAM A. POTTS, of counsel,) for plaintiff in error.

WEIL, BARTLEY & WEIL, (HERBIG YOUNGE, and R. L. RUSSELL, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes on writ of error to review the decree of the circuit court of Tazewell county granting specific performance of a contract for the purchase of a tract of land from the defendant in error. Plaintiff in error is a corporation organized under the act providing for the organization of park districts, and as such maintains and operates a pleasure driveway and park district in the township of Fon du Lac, in Tazewell county. On February 25, 1927, the contract in question was executed by defendant in error and plaintiff in error by the president of its board of commissioners. It provides for the conveyance of 236 acres at $170 per acre, amounting to $40,120. By its terms defendant in error covenanted to convey to plaintiff in error by a good and sufficient warranty deed, upon payment of

the purchase price as in the contract provided, and to immediately furnish the vendee a complete abstract of title brought down to date, showing title free and clear of all encumbrance except a first mortgage in the sum of $20,000, vendee to be given a reasonable time for the examination of the abstract, taxes for 1926 to be paid by the vendor and possession to be given the vendee on or before March 1, 1927. The terms of payment provided that the vendor should immediately execute a warranty deed conveying the premises to the vendee and place the same in escrow, to be delivered when the vendee paid the balance of the purchase price over and above the $20,000 encumbrance, with interest at six per cent from February 1, 1927, vendee to assume said $20,000 encumbrance, with interest thereon after March 1, 1927, at the rate of six per cent until paid. The purchase price over and above the mortgage was to be paid on or before May 1, 1927. The bill alleges full performance on the part of defendant in error of all provisions of this contract, but that the plaintiff in error has failed and refused, without cause, to perform its part thereof or to pay the purchase price.

Plaintiff in error in its answer to the bill admits its corporate existence but neither admits nor denies that it entered into and signed the contract; neither admits nor denies that it agreed to pay the purchase price at the time and in the manner alleged, or that it had received a copy of the contract, or that the agreement was executed by it and delivered to the defendant in error by its authority and under its direction; neither admits nor denies that defendant in error furnished an abstract of title, executed a warranty deed to it and stands ready to perform, but as to all these allegations of the bill the answer prays strict proof. The answer denies that defendant in error had tendered possession on March 1 or that he had complied with all the terms, provisions and covenants of the contract on his part

to be performed; denies that plaintiff in error obligated itself to pay to the defendant in error the purchase price, or that it had failed and refused, without cause or excuse, to perform the contract. The answer further alleges as a matter of defense that as a consideration for the contract defendant in error had agreed to convey to the People of the State of Illinois, for a highway, 4.85 acres, (giving a description thereof,) but that he had wholly failed and refused to make such conveyance; that the said tract was to be used for the construction of a hard-surfaced road from the city of East Peoria to the tract of land involved in the bill; that because of the failure of defendant in error to make conveyance of such land for highway purposes the highway has not been constructed, and that in so refusing to make such conveyance defendant in error broke his contract. By amendment the Statute of Frauds was pleaded, on the ground that the contract was not signed by plaintiff in error or by anyone authorized in writing to sign it.

The cause was referred to the master, who found that the equities were with defendant in error and recommended a decree for specific performance. Exceptions to the master's report were overruled and the decree entered in accordance therewith.

There is but little controversy as to the facts. The defendant in error owned the property in question in fee simple, subject to a mortgage of $20,000. The evidence shows that he delivered his abstract of title to the attorney for plaintiff in error for examination. It also shows that the contract was executed by plaintiff in error by one John Tjaden, the president of its board of commissioners. Defendant in error paid the taxes for the year 1926 and offered to deliver possession of the premises to plaintiff in error on March 1, 1927. The contract was drafted by the attorney for the park board. Defendant in error executed and acknowledged a deed to the premises conveying the same to plaintiff in error and placed the deed in the bank named

in the contract, to be held in escrow, with instructions to deliver the same upon payment of the purchase price by plaintiff in error. At the request of the attorney for plaintiff in error a deed was also duly executed by defendant in error conveying to the State of Illinois a tract of 4.85 acres for a highway through the premises in question. The evidence shows that this deed was later delivered to the Illinois State highway department, that the same has been recorded, and that the tract of land is now in possession of the State and a hard road built thereon. This tract of 4.85 acres was excepted from the contract and deed to plaintiff in error at the suggestion of the latter's attorney, because it was felt that it might be difficult for the park board to make conveyance to the State after it had acquired the property.

As proof of authority on the part of the president of the park board to sign the contract, defendant in error introduced portions of the records of that board showing that at a special meeting of the board on February 9, 1927, attended by four of the five commissioners, together with counsel for the board, the president reported to the board that the owner of the land in question in this case had consented to a sale of the farm to the park board at a price of $180 per acre. The records further show as follows: "Motion by Clemson, seconded by Schmidt, that the president offer the owner * * * the price of $170 per acre, and that the park district will purchase said farm at this price. Carried." The record of the meeting of the board of February 23, 1927, shows the following: "President Tjaden reported that Mr. Potter had accepted the board's offer of $170 per acre for the purchase of the Koch farm. The clerk then read the following ordinance: * * * Motion by Clemson, seconded by Doering, that the ordinance be adopted providing for the issuance of the bonds for Fon du Lac Park District. Carried. All commissioners present voting aye. Motion by Doering, seconded by

Clemson, that we purchase the tract of ground known as the Koch farm from Frank J. Potter. All commissioners present voting aye." Under date of April 27, 1927, the record of the board shows the following: "The commissioners of the Fon du Lac district met in regular session Wednesday evening, April 27, 1927, at the city hall, all commissioners present except commissioner Wilson. Minutes of the previous regular and special meetings were read, approved and ordered filed. Bids on new bond issue were then opened. The commissioners Schmidt and Doering argued against the proposition of purchasing the new park and after much discussion the bids were opened. All bids were for par and accrued interest to date of delivery, with the premiums, and said bond houses to pay for the printing of the bonds and legal work. Motion by Doering, seconded by Schmidt, that the bonds be sold to Seipp, Princell & Co. at par and accrued interest to date of delivery, with a premium to be paid by the bond house of $1035. Carried. All commissioners present voting aye. The following ordinance regarding the bond issue was then read. Motion by Doering, seconded by Schmidt, that the ordinance be approved. Adopted. Carried. All commissioners present voting aye. Motion by Schmidt, seconded by Doering, that this being the last meeting of this year, that the Fon du Lac park board adjourn *sine die*. Carried." Tjaden, president of the park board, testified that he signed both copies of the contract involved here; that he retained one, which he later delivered to the secretary of the park board. He also testified that it was the plan of the board of commissioners to pay for this land out of a bond issue of $45,000, which was being provided by the ordinance adopted April 27, 1927.

The defense of plaintiff in error, as shown by its testimony, was confined to evidence of a description and character of the land and its value. Evidence of value was offered on rebuttal by the defendant in error, and, as is

usual in such cases, witnesses for the plaintiff in error declared the land to be worth much less than the price fixed in the contract, while those of the defendant in error testified that the land was worth as much or more than called for in the contract. On rebuttal, defendant in error also called to the witness stand W. J. Reardon, attorney for the park board, who was then conducting the defense to the bill, who testified that as attorney for the park board he had attended the meetings of the park board, and that on February 23, 1927, he was present and heard and participated in the discussion with reference to the purchase of the land in question; that as a result of that discussion and action he prepared the contract as attorney for the park board; that the 4.85 acres for road purposes was excluded from the contract in accordance with his suggestion, in order to avoid delay and difficulty in transferring that property to the State for highway purposes; that the contract and deeds in evidence were made in his office under his supervision and acknowledgments taken by his stenographer; that he prepared the ordinance introduced in evidence; that the ordinance adopted for the purpose of issuing bonds was to provide funds to pay for the land in question in this case. At the close of all of defendant in error's evidence in rebuttal, witness Reardon was recalled for cross-examination by plaintiff in error. After such cross-examination plaintiff in error moved to strike all the testimony of the witness Reardon given on direct examination in so far as the same divulged the statements of any member of the park board, on the ground that such statements were made while the relation of attorney and client existed between the witness and such member and such communications were privileged. It is here urged that the admission of this evidence was erroneous.

The grounds relied on here are, (1) that no valid contract was entered into between the parties to this suit; (2) the contract was within the Statute of Frauds because

Tjaden, as president of the park board, was not authorized in writing to execute the contract; and (3) it was error to admit the testimony of Tjaden and Reardon as to the purpose of passing the ordinance for the bond issue, and it was error not to strike the testimony of Reardon, as the same was privileged.

As to the invalidity of the contract, it is urged that the minutes of the meeting of the board of February 23, 1927, lacked necessary detail to constitute them authority to any officer of the board to enter into a contract for the purchase of the land; that the minutes of the board show merely a determination of plaintiff in error to purchase the land, and until it in some legal form authorized the execution of a contract, the action of the president in signing such contract was unauthorized. In support of this contention counsel cite *Edgemoor Bridge Works* v. *Bristol*, 170 Mass. 528, 49 N. E. 917, 918. In that case the bridge construction firm presented a proposal to erect a bridge in full compliance with the conditions of a certain advertisement which the county commissioners had made, and the county commissioners had voted to accept the bid subject to certain legislative action, but that the commissioners had refused to award the bridge company the contract. In that case the complaint was not that the county commissioners had entered into a contract, but that they agreed to do so and later refused. A demurrer was sustained to the declaration, and on review it was held that proposals, and award made thereon, which looked to a future execution of a contract, are not necessarily a contract in themselves but it was still to be determined whether an agreement existed; that the records of the county commissioners showed an expectation and intention to enter into a contract on the basis of the proposals, but until such contract was entered into no intention to be legally bound could be inferred. That case differs from the case at bar in important particulars. Here the contract was executed between the president

of the park board and defendant in error, and the records of the board show a proposal by the president at the direction of the board and its acceptance by defendant in error and a resolution adopted that the property be purchased. This was clear authority and direction to the president of the board to execute the contract.

It is also argued that under section 6 of the act relating to the organization of park districts, (Smith's Stat. 1927, p. 1955,) which prohibits the commissioners or any other person from creating a debt against the district except with express authority of the board of commissioners, the contract is illegal because the president of the park board was not expressly authorized by the board to sign it. Defendant in error, on the other hand, contends, first, that the execution of the contract is not in issue, because plaintiff in error by its answer did not make such an issue but admits that the contract was signed by it. As we have seen, the answer does not deny the signing of the contract but calls for strict proof. Denial of the right of the president of the board to sign such a contract does not appear in the answer but the defense is based solely on breach of the contract and on the Statute of Frauds. The charge in the answer of breach of contract is in effect an admission in the record of the existence of such contract. (*McVey* v. *McQuality*, 97 Ill. 93.) It was the duty of plaintiff in error in its answer to apprise defendant in error of the nature of the case it intended to set up, and it is a common rule of equity pleading that a defendant is not entitled to avail himself of a defense not stated in its answer though the same should appear in the evidence. (*Chicago, Rock Island and Pacific Railway Co.* v. *People*, 222 Ill. 427; *Millard* v. *Millard*, 221 id. 86; *Mehan* v. *Mehan*, 203 id. 180; *Kehm* v. *Mott*, 187 id. 519; *Dorman* v. *Dorman*, 187 id. 154; *Crone* v. *Crone*, 180 id. 599; *Johnson* v. *Johnson*, 114 id. 611; *Home Ins. Co.* v. *Myer*, 93 id. 271; 1 Daniell's Ch. Pr.—6th Am. ed.—712.) The records introduced in

evidence, while not expressly directing the president of the board to sign a contract, did direct the purchase of the land, and, more than two months after the execution of the contract, adopted an ordinance for the issuance of bonds to pay for this land. Ratification of this contract, if such was necessary, was fully shown.

It is next contended that the president of the park board was not authorized, in writing, to execute the contract, and that therefore the same is within the Statute of Frauds and void; that to take the case out of that statute it was necessary that defendant in error prove that a resolution was duly passed by the park board expressing the terms of the contract and directing some officer to execute the same. The Statute of Frauds applies to a corporation as it does to an individual. It may, however, sign by an agent. The contract in this case was signed, "Fon du Lac Park District of Tazewell county, by John C. Tjaden, its president." The president is the head and one of the executive officers of the park board, and in signing a contract does not do so as agent but rather as principal. The rule as to agency does not apply to an executive officer of a corporation, who is more than an agent. (*Henry* v. *Black,* 210 Pa. 245, 59 Atl. 1070; *McCartney* v. *Clover Valley Land Co.* 232 Fed. 697.) The records of the park board show that the president was directed to negotiate for the land and that the board determined to purchase it at a certain price. This is sufficient to prevent the application of the Statute of Frauds.

It is also urged that it was error to admit the testimony of Tjaden and Reardon, on the ground that their testimony tended to contradict or supplement the records of the park board by parol testimony. The rule is settled that such records cannot be contradicted or supplemented by parol testimony. But the testimony here complained of does not in any way contradict, supplement or change the record.

The testimony complained of was to the effect that the bonds which were to be issued, and which the record shows were for park purposes, were to be used in the purchase of this land. The effect of this testimony in nowise changed or supplemented the records. The evidence was not open to that objection. As to the testimony of the witness Reardon it was also objected that as he was attorney for plaintiff in error his testimony was in effect the substance of privileged communications between attorney and client. It is a sufficient answer to say that no such objection was raised at the time the testimony was offered. It appears that after the witness had testified on direct examination, cross-examination by plaintiff in error's other counsel was deferred; that thereupon the balance of defendant in error's rebuttal testimony was put in by other witnesses. At a later day the witness Reardon was cross-examined, and subsequent to such cross-examination a motion was made to strike his testimony given on direct for the reasons here urged. If plaintiff in error desired to claim that the evidence was privileged it should have objected to the questions when they were asked and sought opportunity to show that such testimony concerned privileged communications, if they were in fact privileged. (*People* v. *Enright,* 256 Ill. 221.) The motion to strike the testimony therefore came too late.

It appears from the record that ample authority existed for the execution of the contract and that the defendant in error has in all respects carried out his part of the contract, and the chancellor therefore did not err in decreeing specific performance. The decree will be affirmed.

*Decree affirmed.*