Klingensmith *v.* Klingensmith, Appellant.

Argued October 6, 1953. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Vincent R. Smith,* with him *Edgar P. Herrington, Jr.,* for appellants.

*Avra N. Pershing, Jr.,* with him *Henry B. Waltz, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 9, 1953:

The fact that the plaintiff and defendants in this case are brother and sisters has not lessened the ardent intensity of the legal rivalry between them, nor can it dull the edge of the law called upon to do justice between them.

On March 25, 1919, Mattie M. Klingensmith and Effie B. Klingensmith became owners in fee simple (by deed from their parents) of a farm in Salem Township, Westmoreland County. In that year Harry S. Klingensmith left the farm to go live elsewhere. The two sisters, with their father, managed the farm, working and tilling the soil until 1929 when, the father dying, the girls sought independent employment, one as a housekeeper and the other as a practical nurse. They

continued, however, to live in the farmhouse until 1939 when they took up lodgings closer to their respective places of employment. From 1941 to 1946 inclusive, Harry used the farm for pasture and in compensation for this privilege paid the taxes.

Moving from place to place (achieving change of residence 8 times from 1919 to 1947), the plaintiff, in the latter year, settled on the Salem Township Farm and proceeded to operate it. The defendant sisters returned occasionally to the family homestead in which they still retained many of their personal possessions. In 1950, the Peoples Natural Gas Company entered into an agreement with the defendants for the sinking of gas wells on the land and the construction of a right-of-way over it.

On April 4, 1951, the plaintiff entered a suit in equity against his sisters, demanding of them a deed to the farm because of an oral agreement assertedly entered into between him and them on or about November 1, 1946. The defendants denied any such agreement and eventually the case came to trial before a court of equity in Westmoreland County which decreed specific performance, requiring the defendants to convey to the plaintiff a general warranty deed for the Salem Township farm. This appeal followed.

The celebrated Statute of Frauds* is one of the most formidable and salutary safeguards of property in the entire lexicon of law. Through its application, title to land acquires a firmness and permanence as solid and enduring as the particular piece of earth to which it gives metes, bounds and a name. The plaintiff here claims that the absence of the writing required by the Statute does not impair his claim to the land because the law has opened doors through the

---

* Act of March 21, 1772, 1 Sm. L. 389; 33 P.S. 1 et seq.

statute and his claim passes through one of them. He avers that, taking possession of the farm, he has fertilized the fields, introduced electricity into the buildings, installed centralized heating, built chicken houses, erected fences, and cleared and cultivated orchards, spending much money in this rehabilitating process which has converted a run-down and delapidated piece of agricultural property into a first class operating unit and home.

It is true that where continuous and exclusive possession is taken under an oral agreement and improvements are accomplished which are not readily compensable in money, or other equitable considerations intervene to make denial of specific performance a denial of justice, the vendee is excused from the exacting requirements of the Statute of Frauds and he may sue in ejectment or specific performance for title to the land.**

But in such cases the agreement, although oral, must contain all the elements of a legally recognizable contract. In *Beaver v. Slane,* 271 Pa. 317, this Court said: " 'A court of equity will not enforce a contract unless it is complete and certain in all its essential elements. The parties themselves must agree upon the material and necessary details of the bargain, and if any of these be omitted, or left obscure or indefinite, so as to leave the intention of the parties uncertain respecting the substantial terms of the contract, the case is not one for specific performance.' "

What was the agreement which Harry Klingensmith entered into with his sisters? He testified that in October, 1946, his sisters offered to sell him the property for $5,000, but that they would be satisfied

---

** Pennsylvania Annotations of Restatement, Contracts, §197.

with only two-thirds of that amount since he was entitled to one-third. He said that he offered to raise the money indicated but that they replied "we don't need the money." He offered to give them a mortgage but they declined that also. The defendants deny that any such conversation took place, and it would appear, using verisimilitude as a criterion of credibility, that there is more reason to believe the sisters than the brother. Allowing for vagaries of human nature and for the occasional caprice of the human mind, it is a matter of common observation that where a commercial transaction is involved, the brain usually holds to a constant course as it seeks monetary return for property to be vended or services to be performed. Why would the sisters ask for money and then refuse it? Why would they part with their very home and not be interested in at least a mortgage on it?

The plaintiff borrowed $400 from his sister Mattie in 1946 and had not yet paid it back by January 7, 1952 (the date of the trial.) He also borrowed $50 from Effie and repaid $25 of that amount only after she had written him that she was ill and needed the money. The plaintiff testified that this $25 represented his first payment on the purchase price of the farm. It would take a mind tinged with credulity or colored by partisanship to believe that $25, if anything at all was to be accepted, would make a reasonable first payment on a $5000 transaction.

However, even if we were to accredit the story that the defendants offered to sell the land to the plaintiff, did that offer of itself constitute a contract? As Justice WOODWARD cogently expressed the concept as far back as 1853 in the case of *Greenlee v. Greenlee*, 22 Pa. 225, 235: "A promise to convey is only one side of a contract, and, without the counterpart, is nude. What did the other party agree to do? Was he to pay money?

How much, and when? To take possession, and maintain it, and make improvements under the contract? Then let him allege and prove these things. Let him show *both* sides of the contract, or else not expect a decree of specific performance."

"In order to take a parol contract for the sale of lands out of the operation of the Statute of Frauds, its terms must be shown by full, complete, satisfactory and indubitable proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust.": *Hart v. Carroll,* 85 Pa. 508, 510.

Were the terms of the oral agreement of 1946 established by "full, complete, satisfactory and indubitable proof?" Cross-examined on the subject of payment for the land, Harry Klingensmith testified as follows: "Q. . . . How many years were you going to have the right to do that? [make payment] A. There was nothing said about years. Q. Without limit? A. They didn't say. Q. Without limit? A. They said they didn't need the money. Q. Up until you die 20 years later? A. They'd tell me when they needed the money. Q. No definite period to run? A. No." This proposal on the part of Harry as to payment for real property represents the very essence of indefiniteness, wrapped in vaporous obscurity and hidden in the vague, amorphous shell of enigmatic conjecture. The lower court confirms this nebulosity in its Seventh Finding of

Fact: "This sum agreed to be paid was to be paid by the Plaintiff to the Defendants *at some time in the future,* Defendants being secured in the interim by their retention of the record title." (Emphasis supplied) For reasons already given, this finding in itself would be enough to deny specific performance.

Obligations under a contract are to be mutual and not merely unilateral, and both sides must be provided with the weapon of legal redress in the event either defaults in his obligations. But here the defendants could not possibly have compelled the plaintiff to buy the property since the alleged contract did not specify *when* the plaintiff was to pay. And if the defendants were powerless to enforce the contract, the plaintiff could not be armed with any greater right.

In *Haskell v. Heathcote,* 363 Pa. 184, this Court stated: ". . . the statute [of Frauds] prevents the entry of a decree of specific performance against the vendor under the oral contract (for the sale of land), if he elects to invoke it, unless it appears that continuous and exclusive possession was taken under the contract *and* improvements were made by the vendee not readily to be compensated in money, or other equitable considerations make it impossible to do justice save by specific performance."

It is not certain that the plaintiff had exclusive possession of the property since the evidence reveals that the defendant sisters still made use of the farm home and utilized personal property which they had never taken away. In addition, the Peoples Natural Gas Company maintained a right-of-way over the land, a right granted to the company by the sisters, and a transaction of which the plaintiff had direct notice.

It cannot be questioned, on the other hand, that the plaintiff did expend considerable money on improving the farm, but this fact, standing alone, is not

enough to compel specific performance. In the case of an oral agreement specific performance is to be decreed "when justice can be done in no other manner." (*Postlethwait v. Frease, et al.*, 31 Pa. 472, 474.) In that case, improvements were made and the cost of the work done was established clearly and definitely. "Indeed," this Court commented there, "it may be said with strict truth, that the extent and value of the improvements are more distinctly and clearly proved than the contract of sale, the time of taking possession under it, or the amount of purchase-money paid."

The same can be said of the case at bar. The plaintiff himself, and other witnesses also, testified to the amounts expended on the property and to the value of the property. All expenditures made by the plaintiff toward improving the property are, therefore, readily ascertainable.

The evidence in the record does not show performance or part performance which cannot be compensated in damages; nor does it show a performance as would make rescission of the oral agreement inequitable and unjust. (*Weller v. Potts*, 230 Pa. 6.)

Decree reversed. Costs on the appellee.