**Edward C. REA and 22 Ford Inc.**

**v.**

**FORD MOTOR COMPANY.**

**Civ. A. No. 67–286.**

United States District Court,
W. D. Pennsylvania.

May 5, 1971.

Wayman, Irvin, Trushel & McAuley, Beck, McGinnis & Jarvis, Pittsburgh, Pa., for plaintiffs.

Eckert, Seamans & Cherin, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

KNOX, District Judge.

This is a complex action brought by Edward C. Rea, an individual, and a corporation of which he is the principal stockholder which acts as a Ford Motor Company Dealer in the sale and distribution of motor vehicles in Monroeville, Allegheny County, Pennsylvania. The defendant, Ford Motor Company, is a corporation of the State of Delaware with its principal place of business in the State of Michigan. The action is a diversity action as well as an action under the various anti-trust laws and under the Automobile Dealers Act (15 U.S.C. 1221, et seq.).

The complaint has several counts. The first cause of action is for breach of an alleged contract. The second cause of action with which we are primarily concerned on this motion asks reformation of an alleged option agreement dated December 29, 1966, and specific performance of the reformed agreement to convey certain real estate in Allegheny County, Pennsylvania to the plaintiff, Rea. The third cause of action alleges violation of the anti-trust laws of the United States and of the Robinson-Patman Act. The fourth cause of action asks damages for violation of the Automobile Dealers Act, supra. The fifth cause of action alleges an attempt to create a monopoly in violation of the Sherman Act and asks treble damages. The sixth cause of action alleges violation of the Clayton Act and lessening of competition in interstate commerce. The seventh cause of action with which we are also concerned in this motion asks that this court direct the Prothonotary of Allegheny County, Pennsylvania, to index this action as a lis pendens with respect to the real estate in question.

The case has been pending for upwards of four years during all of which time extensive discovery has been taking place, much of which was resisted by the defendant necessitating proceedings in the Eastern District of Michigan. Also, a controversy developed relative to discharge by plaintiff of his original counsel and controversy with respect to counsel's fees which has been recently resolved.

Early in the proceedings, the defendant took the position that plaintiff, Rea, did not have a sufficient memorandum in writing to satisfy the Pennsylvania Statute of Frauds (33 Purdon's Pa.Statutes 1); that all he had was an oral agreement which was denied by the defendant and insufficient facts were alleged to take the alleged contract out of the Statute of Frauds. For this reason, defendant claimed it was entitled to a partial summary judgment with respect to the second and seventh causes of action involving the conveyance of real estate. On July 21, 1967, the Honorable Rabe F. Marsh, now Chief Judge of this court, filed a Memorandum Opinion and Order which provided inter alia as follows:

"It is the opinion of this court that in the present state of the record, the defendant would be entitled to a summary judgment. When all facts are assumed in favor of the plaintiffs, all that is before the court is an oral agreement for an interest in land. Such agreement would be within the provisions of the Statute of Frauds and as such the agreement would have to be reduced to a writing to be enforceable. Thus, even if the court could reform the present lease, it would still be an oral agreement and as such unenforceable so that the court could not grant specific performance because to do so would be to enforce an oral agreement.

"This is fundamental law, but so too is it fundamental law that the writing needed can be a series of writings. Thus, since the period of discovery has been extended through mutual consent of the parties, it is the opinion of this court that the motion for summary judgment is premature.

"NOW, THEREFORE, this 21st day of July, 1967, IT IS ORDERED AND DIRECTED that Defendant's Motion for Partial Summary Judgment will be, and hereby is, denied without prejudice with leave to renew such a motion at a more appropriate time."

Defendant thereafter renewed its Motion for Partial Summary Judgment before the Honorable Herbert P. Sorg, District Judge, who on February 19, 1970, likewise entered an order which provided inter alia that the same be denied without prejudice to the right of the defendant to renew its motion upon completion of discovery.

It appears that discovery has now been completed and the defendant again renews its motion claiming that there is

no right of specific performance because of the Statute of Frauds.

A matter of procedure should be disposed of first. Plaintiff claims that this is not a proper case for partial summary judgment under the Rules of Civil Procedure. However, since there are separate claims or causes of action contained in this complaint, a summary judgment as to certain of these causes of action appears proper under Rule 56(b) [1]. See also Rule 54(b) which provides for the entry of a final judgment as to one or more but fewer than all of the claims.[2]

The court of appeals for this circuit has held that there should be no partial summary judgment for a portion of a single claim. See Coffman v. Fed. Laboratories, 171 F.2d 94 (3d cir. 1948); RePass v. Vreeland, 357 F.2d 801 (3d cir. 1966). The supreme court, however, has specifically held that a partial summary judgment covering one or more claims may be entered when the claims are entirely distinct. Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L. Ed. 1478 (1942).

As previously pointed out, there are seven causes of action set forth in this complaint and while the claims of the plaintiffs with regard to this real estate may be in a certain sense intertwined in all the causes of action, nevertheless, it is our opinion that the claims for reformation of the option agreement for specific performance and lis pendens as set forth in the second and seventh causes of action are separate claims as to which partial summary judgment may be entered separately. We now turn to the merits of the motion.

The Act of 29 Charles II, c. III, is not in effect in Pennsylvania. However, the rule that a contract for sale of real estate must be in writing is provided by Pennsylvania's own act of March 31, 1772, 1 Smith's Laws 389 (33 Purdon's Pa.Statutes 1).[3]

---

1. Rule 56(b) Fed. Rules Civ. Procedure. *"For Defending Party.* A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as .to all or any part thereof."

2. Rule 54(b) F.R.C.P.—*"Judgment Upon Multiple Claims.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims, shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. As amended Dec. 27, 1946, effective March 19, 1948."

3. *"Parol leases, etc.; · estates in lands not to be assigned, etc., except by writing.* From and after April 10, 1772, all leases, estates, interests of freehold or term of years, or any uncertain interest of, in, or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding; except, nevertheless, all leases not exceeding the term of three years from the making thereof; and moreover, that no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law. 1772, March 21, 1 Sm.L. 389, § 1."

■ While the exact meaning of some of this antiquated language in the law may seem obscure to some, it has always been held by the Pennsylvania Supreme Court that the statute means that contracts for sale of real estate must be in writing. See Gerlock v. Gable, 380 Pa. 471, 112 A.2d 78 (1955). If it is necessary to prove any essential feature of a contract to convey real estate by oral testimony, the contract is not in writing as required by the Statute of Frauds. Shaw v. Cornman, 271 Pa. 260, 114 A. 632 (1921). This statute is a declaration of public policy and is a limitation on judicial remedy unless renounced or waived. Haskell v. Heathcote, 363 Pa. 184, 69 A.2d 71 (1949).

■ There are certain exceptions. The purpose of the statute is to prevent perjury. If the defendant admits making the contract either in his pleadings or in his testimony, an oral contract will be enforced. Zlotziver v. Zlotziver, 355 Pa. 299, 49 A.2d 779 (1947). Another exception is where there has been performance or part performance on the part of the purchaser, involving taking possession under the contract and making improvements which cannot be compensated in damages. Klingensmith v. Klingensmith, 375 Pa. 178, 100 A.2d 76 (1954). Under this principle, it has been held that where the lessee of a shopping center, in possession under a parol modification of his original lease, has expended large sums for permanent improvements, to wit, erecting a large building in excess of that specified in the lease, the lessor will not be permitted to assert the Statute of Frauds as a defense. Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co., 407 Pa. 230, 180 A.2d 1 (1962).

Another aspect of the Statute has an important bearing upon our case. It is provided that the writing must be "signed by the parties so making or creating the same, or their agents, *thereunto lawfully authorized by writing*".

■ In the case of corporations, this means that the authority of an employee to sign a contract for the sale of real estate must be in writing excepting only the authority of executive officers of a corporation. Rosenblum v. New York Cent. R. Co., 162 Pa.Super. 276, 57 A.2d 690 (1948) (land agent not authorized); Henry v. Black, 210 Pa. 245, 59 A. 1070 (1904) (treasurer held authorized).

With these basic principles in mind, an examination of all the voluminous depositions and exhibits on file in this case, makes it painfully obvious that we still have only an oral agreement for conveyance of land. This is prohibited by the Statute of Frauds unless admitted by the defendant. This conclusion is reached after giving the plaintiffs the benefit of every doubt. Plaintiff is still unable to point to any writing or series of writings signed by any executive officer of Ford Motor Company or by any agent authorized in writing as required by the statute agreeing to convey this real estate to him. Nor can any definite terms of any arrangement be worked out of all the exhibits in this testimony. All that appears is some evidence of negotiations looking eventually to working out some arrangement between Ford and the plaintiff. Plaintiff's testimony does show that there had been discussion of two arrangements, one whereby the plaintiff, Rea, would purchase the property, lease the same to Ford with a sublease back to Rea or his designated corporation as a subtenant. It is claimed that the rentals from this lease would amortize a mortgage for the purchase and construction over a period of 20 years. The other arrangement was the so-called "buy out option" whereby plaintiff was to be given the option of purchasing the property from Ford over a period of years.

It does appear that the original intentions of the parties indicated that Rea was to be the purchaser. But later, this was changed, and, with Rea's consent, Ford Motor Company became the purchaser and erected the building housing the dealership on the property. Ford thereupon executed with plaintiff a standard lease agreement with no six-

month option to buy. Plaintiff's possession was under the terms of this lease. Plaintiff claims he accepted this lease because he feared he would lose his investment and be put out otherwise.

The closest thing which plaintiff has to a memorandum in writing agreeing to convey the real estate to him is plaintiff's Exhibit 22, an option letter of december 29, 1966, from Ford Leasing Development Company signed by C. J. Fellrath, Assistant Secretary. In this letter, the property is described as the real property presently occupied by 22 Ford Inc. under lease agreement dated November 16, 1964, plus a parcel of land 50 feet wide and 586 feet deep along the westerly boundary of the real property. The option ran for a period of six months and was for a sale price of $538,600.00.

This option, however, was unacceptable to plaintiff. He rejected it and instead brought this suit to reform it. He claimed it did not express the true intention of the parties. If this were reformed, on the basis of the evidence, it would still be an oral agreement unenforceable by the court, as pointed out by Judge Marsh.

■ The court has carefully considered the voluminous briefs and many documents submitted to us in connection with this motion and finds that nowhere is any writing which might measure up to a memorandum under the Statute of Frauds. For instance, Exhibit B to the brief, a letter of January 31, 1967, addressed to a third party, relative to an exchange of real estate in the vicinity refers to the plaintiff as optionee of a person of Parcel A. This is consistent with the option extended on December 29, 1966, which remained open for a period of six months. The letter, however, does not give the details of the option extended and does not specifically describe the property to be conveyed to plaintiffs, or the consideration. We also have as plaintiff's Exhibit 8, a draft of an executive communication among personnel in the Ford Company dated August 27, 1963, which requests approval to purchase property in Penn Hills, Pennsylvania, and then arrange a lease for five years with options to plaintiff. This again does not spell out the terms of any particular option or arrangement with plaintiff.

We also have a paper entitled "Rough Draft" dated February 6, 1966, to Mr. Rea in which it is stated that at the time he became a Ford Dealer, negotiations for this parcel of ground were under way and the company was considering a program whereby dealers would be able to purchase facilities owned by the company. It then states that it was felt that this plan should be changed and was not put in effect. Again, we have nothing but expressions of intention and negotiations which are not sufficiently definite to form the basis of a decree of specific performance.

We have another document dated March 2, 1966, plaintiff's Exhibit 20, which is an intracompany communication signed by Mr. R. Lailile, referring to a possibility of a buy out plan for Mr. Rea and there is a suggested letter attached which states it has been approved by the office of the general counsel. The letter then repeats the statements heretofore set forth in the letter of February 16, 1966, Rough Draft. We also have a letter dated August 22, 1966, plaintiff's Exhibit 21, wherein it is recommended that Mr. Rea be offered an opportunity for the outright purchase of the land and facilities now under lease plus 30,000 square feet (50 X 600 of "Stockpile land"). It recommends that Mr. Rea be granted a six-month option to purchase this for cash at current market value to be not less than the company's actual cost of $480,737.00. Again, this is nothing more than a recommendation and cannot be construed as a final contract or memorandum.

After examining all of these papers, there appears to be some expression of intention to enter into a direct lease or buy out arrangement with Mr. Rea. The question is: What written evidence

do we have of the terms of the contract? What contract are we supposed to enforce? As stated, if any essential features of the contract must be proved by oral testimony, the contract cannot be enforced under the Statute of Frauds. Shaw v. Cornman, supra; Llewellyn v. Sunnyside Coal Co., 242 Pa. 517, 89 A. 575 (1914); Fleming v. Strayer, 163 Pa.Super. 607, 63 A.2d 122 (1949). The latter case holds that where the description is insufficient so that a surveyor could not locate the same (See also Pierro v. Pierro, 438 Pa. 119, 264 A.2d 692, (1970)), where the consideration is not defined and where the purchaser is not identified with particularity, there is nothing upon which the court can base a decree of specific performance.

At the present time, we do not know whether we are supposed specifically to enforce the original "direct lease" transaction or the "buy out" proposition and we do not know what the terms are or the terms of financing. The consideration is nebulous and we are not certain whether the original contract, if it existed, was with Mr. Rea or with his corporation.

Further, we must ask ourselves in determining whether there was an actual contract here: Would we enforce this contract in a suit by Ford against Mr. Rea and 22 Ford Sales, Inc.? Unless they had signed the option agreement attached to the complaint which was repudiated by them, certainly Ford Motor Company would have nothing definite to go on in suing the plaintiffs, since it would appear that nothing more than negotiations looking to a final contract had occurred.

A further stumbling block to plaintiff's action for specific performance is the fact that none of the writings on which he bases his claim for specific relief is signed by any executive officer of Ford Motor Company. Under Henry v. Black, supra, in the absence of such a signature, he must show authority in writing for persons who signed these various letters and documents to bind the Ford Motor Company in a contract for sale of real estate. This, he has failed to do. No one has brought forth a resolution of the Board of Directors of Ford Motor Company authorizing anyone to sign documents with Mr. Rea nor is there any communication or authorization signed by one of Ford's executive officers authorizing any of the employees to execute an agreement with the plaintiffs.

Plaintiff's evidence further falls short of that required to take a case out of the statute as a result of partial performance. For plaintiff to succeed on these grounds, he must show the terms and conditions of the alleged agreement, that he took possession pursuant to the terms of the agreement and made improvements which are not easily compensable in damages. See Klingensmith v. Klingensmith, supra; Rader v. Keiper, 285 Pa. 579, 132 A. 824 (1926). The sale of other assets in reliance upon the alleged oral agreement is insufficient. Haskell v. Heathcote, supra.

In the instant case, we do not know what the terms of the alleged contract were, nor does it appear that plaintiff took possession under the contract rather than under the terms of the lease. The lease is in evidence as defendant's Exhibit 3, attached to the deposition of Mr. Rea, and does include a legal description of the real estate covered by it which does not include all the real estate which is subject to this suit. It is an ordinary lease for an automobile dealer extending for a term of 60 months from November 16, 1964, or such time as the buildings on the premises may be completed and ready for occupancy. It contains no option to renew and nothing is said about an option to purchase the real estate. The cost of the improvements placed on the premises is set forth in the complaint. They appear to be of the type of improvements which an automobile dealer would expect to make in taking possession of the building for this purpose and which he would expect to amortize for tax purposes over the term of the lease. It is not the type of improvement such as a large building built

on land not covered by the existing lease which was involved in Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co., supra.

Although not pleaded in the complaint, plaintiffs at argument indicated that they were also relying upon an implied resulting trust or a constructive trust. It was pointed out at argument the doctrine of resulting trust does not apply at all since this is not a case where plaintiff furnished the purchase price of the property and put the title in the name of someone else. See Watkins v. Watkins, 101 Pa.Super. 426 (1931) holding there could be no such trust where there was no fraud in obtaining the title or no payment of the purchase money by the plaintiff prior to acquisition of title. Nor is it a case of a constructive trust where the alleged trustee was in a confidential relationship with the plaintiff and plaintiff had title placed in the name of the alleged trustee for some confidential purpose. In this case, plaintiff never owned the property and assented to Ford Motor Company purchasing it in its own name. These parties were a dealer and a manufacturer. There was not necessarily any confidential relationship between the two. If plaintiffs wished to protect themselves, they should have insisted upon some agreement or memorandum in writing signed by Ford showing that Ford was acquiring the title for the benefit of the plaintiffs, but no such document exists. For the above reasons, we feel that we must grant the Motion for Partial Summary Judgment on Counts 2 and 7. All the material submitted shows there is no genuine issue as to any material facts and defendant is entitled to judgment as a matter of law on these two claims.

We appreciate that this is a matter of great importance to the plaintiff and that there may be substantial ground for difference of opinion. The plaintiff has requested that if we arrive at this decision, we enter a certificate permitting an appeal to be taken from this order if the same is necessary, pursuant to 28 U.S.C. 1292(b).

In view of the fact that this order completely dismisses plaintiff's claims under the second and seventh causes of action, it does not appear that there is a need for an order under 1292b. However, in order to protect plaintiff's rights in case there is any misunderstanding with respect to this, we will make such a certificate.

Further, in accordance with Rule 54(b), we make an express determination that there is no just reason for delay with respect to the determination of plaintiff's claims under the second and seventh causes of action and we expressly direct entry of judgment for the defendant with respect to said claims.