## Rose Valley Borough et al. v. Rose Valley Acres et al.

*Allen S. Olmsted, 2d,* for plaintiffs.

*Lutz, Ervin, Reeser & Fronefield,* and *Edward H. Bryant,* for defendants.

MACDADE, J., September 15, 1937.—On July 7, 1937, plaintiffs filed a bill in equity against defendants, and averred therein that defendants gave to a real estate development, in which they are financially interested, the name of "Rose Valley Acres", without the consent of or consultation with the people of or authority from the Borough of Rose Valley, the latter claiming for Rose Valley a certain goodwill and reputation, upon which the development therefore unlawfully encroaches.

It is really a bill in equity to enjoin defendants from appropriating the name of "Rose Valley" for a real estate development outside of the Borough of Rose Valley.

It is needless to say that defendants deny that their real estate development, known as "Rose Valley Acres", in any way prejudices the rights of the inhabitants of Rose Valley Borough or deprives them of their goodwill and reputation, but aver that on the other hand the name of Rose Valley has a broader meaning than the mere limitations in area of the said municipality, because not all of the people in the territory known as "Rose Valley" desired to have the said territory incorporated into the

Borough of Rose Valley; and further, that that section of Delaware County has been generally known as Rose Valley and involves more in territory than actually the borough of that name, which is only an integral part thereof; that the development is within one half mile of the said borough, with no intervening settlements, and is part of the area generally known as "Rose Valley".

Whereupon, anent pleadings, one of these defendants (John A. Lafore) has come into court with a petition setting up that the said bill in equity has been indexed against him in the judgment index; that the subject matter of the said bill does not involve the title to real estate, nor is it a matter of which a purchaser of any of the lands of the defendant would be deemed to have constructive notice by reason of such indexing. And this defendant, further averring that the entry of the said action upon the judgment index will cause him loss, damage, and delay in disposing of any of his real estate, requested a rule (which was granted) to show cause why the Borough of Rose Valley and Robert M. Saul, trustee, plaintiffs herein, and Lulu W. Pancoast, prothonotary, should not appear, and why the said entry should not be stricken from the judgment index.

To this petition and rule, plaintiffs filed an answer which avers that the indexing of the said bill in equity gives purchasers of defendants' lands constructive notice of the contents of the said bill; denies that the defendants, by reason of the indexing, will sustain loss, damage, or delay in disposing of any of the real estate; avers that documents using the name of "Rose Valley Acres" will enhance the confusion of which the said plaintiffs complain, and that the indexing of the said bill in equity, especially in view of the plaintiffs' action, will tend completely to disclose to purchasers and title companies all its contentions in this matter, and cannot hinder any sales of houses in "Rose Valley Acres".

This is the issue we are to decide preliminarily. Should this action be indexed in the judgment index as a lis

pendens, and where and what is the authority for such action by the prothonotary? Now is the time to raise the question of lis pendens, before pleading the issue: Holtzner v. Byrne, 10 W. N. C. 101; Pennsylvania Co. for Ins., etc., Admr., v. Philadelphia National Bank, 14 Pa. C. C. 193. Therefore, the questions involved are:

1. Has the prothonotary any right under the circumstances of the case, as shown by the pleadings (no testimony being offered or adduced by either party), to index the same in the judgment index or docket under the Act of June 15, 1871, P. L. 387, sec. 1, 17 PS §1908? Its relevant portion is as follows:

"That when . . . any other proceeding by which purchasers of real estate would be deemed to have had constructive notice, shall have been commenced in any of the courts of this commonwealth, it shall be the duty of the several prothonotaries and clerks to enter the same upon the judgment indexes or dockets of said courts".

Is the act broad enough to cover this case? Arguendo, assuming that it is, have these plaintiffs resorted to the proper practice? Should not their attorney have filed with the prothonotary a præcipe to index lis pendens, such as the following:

"To L. W. Pancoast, Prothonotary:

"Index the above case on the judgment index against John A. Lafore as a matter lis pendens.

"Attorney for Plaintiffs".

This was not done in the instant case, but the prothonotary was expected to know that 65 years ago there was an act of assembly permitting an indexing under certain provisions of the act as a matter of "lis pendens".

By recourse to the record we find scribbled or written in script at the bottom of the first page of the bill in equity, consisting of six pages, these words "Index against John A. Lafore." It is not signed by any person, does not say where it is to be indexed nor is it addressed to anyone. It would appear that this inscription was improvised as an afterthought when the bill had already

been drafted and executed. The prothonotary was not under any official obligation to recognize this notation, if it can be dignified with such an appellation.

The careful or proper practice would have been to issue the præcipe, the form of which we have suggested; that is, if the Act of 1871 was broad enough to cover this case. The effect of such indexing, if there is no warrant for it, is to the prejudice of the title of defendants, and certainly no title is involved in this litigation. Why should defendants have a cloud upon their title so gratuitously? Plaintiffs are allowed only what the act permits. Beyond that they cannot go and harass defendants by impaling them upon the prongs of title insurance. "Remove the cloud", is the command, "or we shall not give you any assurance of a good title." This procedure, if generally practiced, would be a legal sandbag. A court of equity should not countenance such results. It as presently indexed cannot affect and bind defendants' interest by the decree. If it cannot, why embarrass defendants in the sale of their property, which they are developing as real estate operators? It may lead to financial ruin to place such incumbrance upon their title as a cloud thereupon. This proceeding is not a real action at common law where only a lis pendens properly applies. It is no more than the adoption of a rule in a real action at common law, where, if defendant aliens after the pendency of the writ, the judgment in the real action will overreach such alienation. It is virtually conceded that this is not a real action and that lis pendens will not affect the issues raised.

What is lis pendens anyhow?

It is a pending suit, action, dispute, or controversy. The doctrine applies to proceedings in equity: Diamond v. Lawrence County, 37 Pa. 353. This case holds:

" 'The established rule is . . . that a *lis pendens*, duly prosecuted, and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree; and the *lis pendens* begins from the service of the *subpœna* after the bill is filed . . . it is no more than the adoption of the

rule in a real action at common law, where, if the defendant aliens after the pendency of the writ, the judgment in the real action will overreach such alienation.' "

To restate: "Lis" means a suit, action, controversy, or dispute; and "lis pendens" means a pending suit. The doctrine denotes those principles and rules of law which define and limit the operation of the common-law maxim, pendente lite nihil innovetur, that is, pending the suit nothing should be changed. Lord Bacon first formulated the rule of lis pendens. The equity doctrine of lis pendens was introduced in analogy to the rule at common law in a real action, where, "if defendant aliens after pendency of the writ, the judgment in the action will overrule such alienation": 38 C. J. 6.

If plaintiffs succeed in their contention in the bill in equity, how would conveyances of the property in question pending this litigation to others prejudice their rights? If it would not, why a lis pendens to annoy and harass them in their title and force them to bow to an intolerable condition which is commonly known to prevail in certain circles? Our thought is that this dispute is not as to the land itself, and that a decree herein favorable to the plaintiffs' prayer would not bind these defendants by a decree: Green et al. v. Rick, 121 Pa. 130.

If this were a real action or a petition for specific performance of a contract of a decedent, as illustrations, we would be able to perceive the need of the learned attorney's advocacy of a lis pendens, but this is a personal action to restrain the use of a name.

There is no authority of any act of assembly to index the above-captioned case. Plaintiffs may seek to.convince us that the Act of 1871, supra, might seem to vest authority in the prothonotary to index the above bill in equity on the judgment index and against defendants. A careful reading of this act will at once disclose that this in no wise permits the prothonotary to index this bill in equity, for the reason that it is apparent at a glance that this bill in equity is an action in personam and does not

in any wise affect the title to defendants' real estate or their right to possession of the same: See 6 Brewster's Practice, p. 820, wherein he says:

"Where the suit is for a personal demand, the land is' not liable until sequestration. *Crofts v. Oldfield*, 3 Swanston, 278 *n.* (1676) ; *Bird v. Littlehales*, Id., 299 *n.* (1743) ; *Hamblyn v. Ley*, Id., 301 *n.* (1743).

"By the Act of 15th June, 1871, §1 (P. L., 387), the filing of a bill in equity relating to realty must be entered upon the judgment index and certified as a lien. See *Duff v. McDonough*, 155 Pa. St., 10 (1893)."

This last case decides (p. 13), under the Act of 1871, that when, among other things, any petition to declare void any deed, etc., or any other proceeding, by which purchasers of real estate would be deemed to have had constructive notice, shall have been commenced, etc., it shall be entered on the judgment index. The act does not appear to make the entry on the judgment index notice to anyone, nor to provide that the lis pendens should not be notice unless so indexed, differing in this respect from the Act of April 22, 1856, P. L. 532, establishing the judgment index, which provides that the pendency of the action shall not be notice unless indexed.

"The act of 1871, however, provides that when any action is 'commenced' it shall be indexed, and that it shall be certified as a lien in any certificate of liens required to be made, which possibly indicates an intention on the part of the legislature to make the notice begin from the commencement of the action. There does not appear to have been any case decided upon this point since the act of 1871."

It is, therefore, at least very doubtful if the indexing of the bill on the judgment docket is notice to the defendant Lafore: Fessler's Appeal, 75 Pa. 483.

The indexing in the instant case is without authority of law and the court should strike it off.

And now, September 15, 1937, upon consideration of the petition to strike off indexing and the answer filed,

and on motion of Edward H. Bryant, attorney for defendants, it is ordered, adjudged, and decreed that the record of this bill in equity which has been indexed in the judgment index be and the same is hereby stricken from the judgment index of this court; and the prothonotary be and is hereby ordered and directed to make the proper notations thereof upon said judgment index.