Goldman et al., Appellant, *v.* McShain.

62

Argued November 30, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused November 27, 1968.

*Bernard M. Borish,* with him *H. Robert Fiebach,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellants.

*Harold E. Kohn,* with him *Bruce W. Kauffman, David Pittinsky, Vincent P. McDevitt,* and *Dilworth, Paxson, Kalish, Kohn & Levy,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, October 28, 1968:
Appellants, William Goldman and William Goldman Theatres, Inc., instituted this equity action in the court below seeking specific performance of a contract calling for the erection and operation of a motion picture theater on land owned by appellee, Country Club

Estates. Appellee, John McShain, Inc., was to undertake the construction. Appellee John McShain controls both Country Club Estates and the building corporation bearing his name. Appellees filed a motion for judgment on the pleadings alleging, inter alia, that appellants had failed to plead an enforceable contract. The court below agreed that no enforceable contract had been pleaded, thus concluding that appellants were entitled to neither equitable relief nor damages at law. However, instead of granting appellees' motion and dismissing the complaint, the chancellor certified the case to the law side for the limited purpose of allowing appellants, if they could, to prove a case for restitution: the return of moneys allegedly expended by appellants in contemplation of the theater project. From this decision the present appeal has been taken.

Before reaching the merits, however, we must first discuss appellees' motion to quash the appeal. There can be no doubt that this Court has held unappealable an order certifying a case from equity to law. *Ridge Radio Corp. v. Glosser*, 417 Pa. 450, 208 A. 2d 839 (1965); *McFarland v. Weiland Packing Co.*, 416 Pa. 277, 206 A. 2d 18 (1965). However, this rule flows not from the mere fact that a case has been certified from one court to another, but from the fact that this certification still leaves open the possibility that the appealing party might eventually be made whole, i.e., that a court of law may award sufficient money damages to substitute for the equitable relief held unavailable. In short, the certification is but an interlocutory order.

In the present case, however, it can be clearly demonstrated that this particular certification was not interlocutory; under it, appellants may *not* be made whole. Unlike the normal certification of a contract case to the law side for damages in assumpsit on the

contract, here we are presented with a decision by the chancellor that there was *no* contract at all—that there could be no relief ex contractu, equitable or legal. To the extent that appellants entered court seeking relief on their alleged contract, they were turned away with absolutely nothing. The chancellor made all the findings necessary to dismiss appellants' complaint, and had he done so his order would unquestionably have been appealable. That, almost as an afterthought, the chancellor told appellants that they could seek restitution for out of pocket expenses in no way alters the effect of his order; and that effect is to put appellants completely out of court vis-a-vis *this* lawsuit. Even had the chancellor granted appellees' motion for judgment on the pleadings and dismissed the complaint, appellants could still have pursued their restitution remedy, since it would not be dependent on the contract as initially pleaded. Thus, the certification was in a real sense but a legal gesture.

*McCahill v. Roberts*, 421 Pa. 233, 219 A. 2d 306 (1966), reaffirmed the established rule that an order which puts a party "out of court" is not interlocutory. It does not matter that the litigant so affected can carry his banner into another court on another theory. In *McCahill*, plaintiff commenced an action in equity seeking title to a building, an injunction to prevent the sale of that building, and any other relief deemed to be appropriate. When the court below cancelled lis pendens, thus permitting defendants to sell the property immediately and in so doing deprive plaintiff of the *type* of relief sought, we held the court's action appealable. We there said: "The court's order is final in that it effectively puts the plaintiffs 'out of court' so far as their present claim is concerned . . . ." 421 Pa. at 236, 219 A. 2d at 308. See also *Grota v. La-Boccetta*, 425 Pa. 620, 230 A. 2d 206 (1967); *Poster-*

*nack v. American Cas. Co. of Reading*, 421 Pa. 21, 218 A. 2d 350 (1966). Believing that the present case is controlled by *McCahill*, rather than by the general rule on appealability of certification orders, we deny appellees' motion to quash.

A decision on the merits of this controversy requires a more complete recitation of the facts as pleaded than that needed to dispose of the motion to quash. Late in 1963 William Goldman, an operator of motion picture theaters, and John McShain, a builder and owner of the subject property, began discussing the possibility of erecting a motion picture theater on part of McShain's tract known as "Presidential Center" a ninety acre parcel located at the intersection of two heavily travelled Philadelphia arteries. In March of the following year, McShain drew this document which was signed by both parties:

"Up to $500,000, including 6% architect's fee, we share costs fifty-fifty. Over above, McShain pays.

"Lease is for 25 years. We pay the taxes.

"On the first $400,000 gross income, we get 10%. On the next $50,000 income, we get 11%. On amount above $450,000, we get 12%.

"After 12 months, we review the entire deal, and adjustments will be made.

"If referee is necessary, William Kelly will be designated as referee."

While this document certainly lacks the formality one normally associates with a contract for so significant a venture, it seems fairly certain that the instrument shows that the parties agreed to construct the theater, splitting the costs of construction up to $500,-000 and splitting a six percent architect's fee on that amount. McShain agreed to pay all additional construction costs, as well as all taxes on the property. Once the theater was built, Goldman agreed to rent

it for 25 years, paying McShain a rental based upon a percentage of gross receipts. Finally, the parties agreed to review the undertaking after one year and submit disputes to a designated arbitrator.

About the same time as this agreement was signed, Goldman and McShain jointly hired an architect to design the theater itself. However, during the next year many complications arose concerning the possibility of condemnations by the city for new roads which would, if built, bisect appellees' tract. Although these complications were eventually settled, it was not until October, 1965 that final plans were completed by the architect. In the meantime, both parties were exchanging numerous letters and partial plans. Appellants allege that these documents, taken together, show agreement on certain elements of the venture not specifically mentioned in the March, 1964 writing; viz., exact location of the theater on the tract, size and location of parking facilities, final plans for the theater building itself. Finally, a large sign was erected on the tract announcing the construction of the theater, and on November 12, 1965 a formal ground breaking ceremony was held. Thereafter, however, McShain refused to continue the project and eventually this lawsuit was commenced.

In holding that appellants failed to plead an enforceable contract the court below concluded that the March, 1964 document was evidence merely of preliminary negotiations. The chancellor reached this conclusion largely on the basis of findings that the parties failed to reach agreement on parking, final plans and theater location. The chancellor also relied heavily on a thirty page detailed lease which was sent by Goldman's attorney to McShain but never signed by appellee. This, the court concluded, established that the March memorandum was never intended to be a

binding contract; instead, the lease alone was to signal the start of binding obligations; since that lease was never signed by McShain, no such obligations arose.

We have no doubt that had the chancellor permitted the parties to go to trial and had then, upon hearing all testimony, concluded as a finding of fact that Goldman and McShain did not intend the March agreement to be an enforceable contract, this Court would not have disturbed such a finding assuming there was competent evidence below and the court did not abuse its discretion. However, in holding as a matter of law that appellants failed to *plead* a valid contract, we think the court below erred. This Court has long recognized the principle that documents, having the surface appearance of contracts may be in fact evidence of mere negotiating by parties with a view toward executing a binding contract in the future. Should this be the case, of course, such documents cannot form the basis for recovery. See, e.g., *Essner v. Shoemaker*, 393 Pa. 422, 143 A. 2d 364 (1958); *Onyx Oils & Resins, Inc. v. Moss*, 367 Pa. 416, 80 A. 2d 815 (1951); *Reich v. Vegex,* 51 F. Supp. 99 (E.D. Pa. 1942). However, in each of these cited cases it was only *after trial* that such a conclusion was reached.

In order to succeed on a motion for judgment on the pleadings, the moving party's right to prevail must be so clear that "a trial would clearly be a fruitless exercise." *Bata v. Central Penn Nat. Bank of Phila.,* 423 Pa. 373, 378, 224 A. 2d 174, 178 (1966), cert. denied, 386 U.S. 1007, 87 S. Ct. 1348 (1967). This is so because the motion for judgment on the pleadings is in the nature of a demurrer, and as such is adjudicated upon the assumption that all of the opposing party's (in this case Goldman's) well-pleaded allegations are true; moreover, only specifically admitted facts may be used against him. Thus, in the present

case, even though McShain alleged in his answer that no agreement had been reached on parking, theater location, or final plans, since Goldman alleged the contrary we must assume in passing on McShain's motion that agreement *had* been reached on these matters.

A similar disposition must be made of the unsigned lease pleaded by McShain in new matter as being the only potentially enforceable document contemplated by the parties. Goldman's reply to the new matter categorically denies that the lease embodied the only true contract; instead appellants allege that the lease was merely intended to formalize the previous agreement of March, 1964 which agreement by itself was enforceable. Section 26 of the Restatement of Contracts specifically recognizes that parties may bind themselves contractually although they intend, at some later date, to draft a more formal document: "Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; . . ." Restatement, Contracts §26. Even more significant at least for purposes of this decision, is the comment to section 26 of the Restatement which recites that *oral testimony* is usually required to determine whether the parties did or did not intend the formal document to be the only binding agreement.[1]

---

[1] Comment b to Restatement of Contracts §26 states: "If the parties indicate that the expected document is to be a mere 'memorial' of operative facts already existing, its non-existence does not prevent those facts from having their normal legal operation. *What that operation is must be determined largely by oral testimony,* or by preliminary or only partially complete writings. If the parties indicate that the expected document is to be the exclusive operative consummation of the negotiation, their preceding communications will not be operative as offer or acceptance. *This also must be shown largely by oral testimony."* (Emphasis supplied.)

70

Because the intent of the parties in cases such as this so often turns upon disputed questions of fact, it is only the very rare case which can be decided upon pleadings alone. Although appellees cite two such decisions, neither can be said to control the present controversy. In *Upsal St. Realty Co. v. Rubin*, 326 Pa. 327, 192 Atl. 481 (1937), plaintiff landlord sought to enforce a putative lease against the defendant. In holding that the defendant was entitled to a judgment on the pleadings this Court was very careful to note that the alleged lease set up by plaintiff as creating binding legal obligations could not have been intended as a real lease since it was specifically captioned "Application For Lease." The instrument was nothing more than a form which prospective tenants filled out indicating how much they would pay for an apartment and for how long they intended to rent. Other than this, however, the application contained merely information about the prospective tenant upon which the landlord would decide whether to rent the premises to the applicant. In fact, the application stated, inter alia, that the selection of colors for the apartment would be made only "after the lease is signed." By contrast, it is not at all clear from the pleadings in the present case that Goldman and McShain did not consummate a binding agreement. Only a trial can uncover this crucial fact.

*Farrell v. Bowker,* 278 Pa. 323, 123 Atl. 305 (1924), the other case relied upon by appellees, is also inapposite. There, the contract sought to be specifically enforced called for the transfer of certain property. However, by the very terms of the alleged contract the grantor was to reserve a certain part of the tract for himself. Unfortunately, the document upon which suit was brought failed to indicate, at any point, where the reserved land was, and unlike the present case, no

additional documents were pleaded from which the information could be gleaned; nor did the complaint even *allege* that agreement had been reached concerning this parcel. Thus, in *Farrell,* as a matter of law as well as logic, specific performance could not be decreed.

In our view, *Building Mart, Inc. v. Allison Steel Manufacturing Co.,* 380 F. 2d 196 (10th Cir. 1967), presents a situation much closer to the facts now before us than any Pennsylvania case we have found. In *Building Mart* appellant contractor alleged that it had agreed with appellee subcontractor that the latter would supply and erect structural steel for a project undertaken by appellant for the federal government. In support of this allegation, appellant pleaded an oral agreement between high ranking officers of both companies, as well as numerous letters written by both sides which tended to show that agreement had been reached on practically all material points. Appellee responded to this pleading by alleging the existence of a formal contract which was mailed to appellee but never signed. On the basis of this document, the trial court granted appellee-defendant's motion for summary judgment, holding that this unsigned contract proved the prior dealings to be mere preliminary negotiations. In reversing, the Tenth Circuit said quite simply: "The question whether the parties intended any prior agreement to be binding notwithstanding a contemplated later written memorialization also was a question of fact inappropriate for summary resolution. [citing cases]" 380 F. 2d at 199.

In addition to arguing that appellants failed to plead a completed contract, appellees also maintain that any attempt to embellish the March, 1964 agreement runs afoul of the Statute of Frauds, and that standing by itself this agreement cannot satisfy the statute. We need not face this argument however for

the reason that this particular statute of frauds cannot be raised by a motion for judgment on the pleadings.

Speaking for the Court in *Brown v. Hahn*, 419 Pa. 42, 213 A. 2d 342 (1965), Mr. Justice JONES noted that only certain statutes of frauds could be raised by preliminary objections; others could be raised only as new matter since they are affirmative defenses which must be pleaded and proven. In distinguishing between the two types of statutes, Mr. Justice JONES stated: "Bearing in mind that the provisions of the several Statutes of Frauds differ in that language and that provisions of some Statutes of Frauds make unenforceable or void oral agreements in violation thereof while provisions of other Statutes of Frauds constitute declarations of public policy, the appropriate rule is that, if the particular statute operates to bar or destroy the plaintiff's right of action, i.e., is a limitation on the power of the judiciary to afford a remedy, such statute constitutes a ground for demurrer and may be raised by preliminary objections: on the other hand, if the statute merely gives the defendant a waivable defense, such defense must be raised under Rule 1030 [new matter] and not under Rule 1017(b) [preliminary objections]." 419 Pa. at 49, 213 A. 2d at 345-46. *Brown* holds that the Statute of Frauds requiring a writing for land contracts (Act of March 21, 1772, 1 Sm. L. 389, 33 P.S. §1) is of the second type, i.e., it creates a waivable defense and must be raised as new matter, not by preliminary objections. Since appellees in the present case are also relying on this particular Statute of Frauds, *Brown* controls so long as, on this issue, a motion for judgment on the pleadings equates with preliminary objections. We agree with appellants that such an equation does exist.

We held in *London v. Kingsley*, 368 Pa. 109, 81 A. 2d 870 (1951), that "A motion for judgment on the pleadings is in effect a demurrer." This notion is reinforced by the comments to Pa. R. C. P. 1034 appearing at 1 Goodrich-Amram, Standard Pennsylvania Practice 243-44 where the authors state, inter alia, that the motion for summary judgment affords defendant another opportunity, in addition to a preliminary objection, to challenge the sufficiency of a complaint. This similarity between preliminary objections in the nature of a demurrer and the motion for judgment on the pleadings also gains support from the fact that in both cases the trial judge must accept as true all facts properly pleaded by the opposing party. When the defendant moves for summary judgment therefore, he is merely alleging that plaintiff's complaint has not stated a claim upon which relief may be granted.[2] See also Pa. R. C. P. 1032(1).

Thus a defendant may not rely on his affirmative defense to sustain a motion for judgment on the pleadings, unless of course plaintiff has failed to deny the allegation in defendant's new matter which raises that defense. In the present case, however, appellants' reply to appellees' new matter *specifically denies* that the statute of frauds controls. Moreover to say that a possible affirmative defense exists to a complaint is not to say that such a complaint is legally insufficient on its face. It may still *state* a claim upon which relief can be granted, even though the relief itself will eventually be denied should defendant prove his affirmative defense. Surely, for example, we would not hold that a complaint in trespass failed to state a

---

[2] Under appropriate circumstances, the motion for judgment on the pleadings may also be used to raise the failure to join an indispensable party, as well as the failure to interpose a legal defense. Pa. R. C. P. 1032(1).

claim upon which relief could be granted simply because the defendant's new matter raised the defense of contributory negligence. To prevail, defendant would still have to *prove* that defense at trial or somehow succeed in having plaintiff admit it in his own pleadings. The result is no different here. Appellees have raised the statute of frauds in their new matter and appellants have denied its applicability. Issue has thus been joined; its resolution cannot be based on pleadings alone.

Appellees next contend that relief must be denied because the contract is too vague for a court of equity to grant specific performance and that should the court so attempt it would burden the chancellor to an extent not accepted under equitable doctrines. While we recognize the principle that equity will not grant specific performance unless the contract be clear and unless the performance ordered can be supervised without placing undue burdens on the court, we would be loath to hold that equity must stay its hand on this ground even *before* the chancellor has heard any testimony. Of course, having permitted the issues to be fully litigated, the court below may then conclude that no enforceable contract ever existed. Or it may conclude that there was a contract but that equity could not enforce it specifically due to the complex nature of its terms. In that case certification to the law side for damages may be in order. But on a motion for summary judgment, given these pleadings we do not think appellants may be put out of court.

Similarly, we hold that the motion for summary judgment cannot be granted simply upon the allegation by appellees that the death of their mutually agreeable arbitrator has now rendered the contract unenforceable. Whether either party intended the continued life of the arbitrator to be a condition prece-

dent to enforceability of the agreement is a matter of fact which must be settled at trial, especially in view of appellants' denial that such intention ever existed.

There remains, finally, one additional matter to discuss in connection with this case, a dispute concerning the lis pendens indexed against McShain's property. The lis pendens as originally indexed covered all of Presidential Center; however the area covered was later limited to the proposed theater site plus land to be used for parking. Of course, when the chancellor determined that appellants had failed to plead an enforceable contract, the court below ordered the amended lis pendens stricken. Appellants now urge this Court to reinstate it.

Appellees counter with the proposition that the lis pendens was never properly entered in the first place since appellants failed to get court approval before filing with the prothonotary a praecipe to index lis pendens. We agree with appellants that such prior court approval was not necessary. The Act of June 15, 1871, P. L. 387, §1, as amended, 17 P.S. §1908, directs that whenever any proceedings have been commenced "by which purchasers of real estate would be deemed to have had constructive notice . . . *it shall be the duty* of the several prothonotaries . . . to enter the same upon" the proper court index. (Emphasis supplied.) This mandatory directive to the prothonotary would certainly not appear to be the kind of act for which prior court approval was required by the Legislature.

Nor is this rule inconsistent with the proposition that lis pendens is an equitable doctrine whose operation is subject to court limitation should it work an undue hardship upon the affected property owner. *Dice v. Bender*, 383 Pa. 94, 117 A. 2d 725 (1955). To say that a lis pendens may be initially *indexed* by prae-

76

cipe alone in no way prevents the burdened litigant from moving to have the lis pendens amended or stricken. To require advance court approval, however, for even the indexing of the lis pendens would be to add an unnecessary strain on the litigants and the trial courts. The procedure used by appellants to index their lis pendens was a correct one. *Rose Valley Borough v. Rose Valley Acres,* 31 Pa. D. & C. 261 (C.P. 1937).

We shall therefore order the amended lis pendens reinstated, subject of course to appellees' right to contest, by motion to strike filed in the court below, the size and location of the tract actually affected.

The decree certifying this case to the law side for restitution is reversed, the amended lis pendens is hereby ordered reinstated, and the case may proceed to trial.

Each party to pay own costs.

Mr. Chief Justice Bell concurs in the result.

Mr. Justice Eagen and Mr. Justice O'Brien dissent.