508

Reis *v.* Phillips Products Co., Inc., Appellant.

Argued April 15, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Robert L. Walker*, with him *Thomas, Shafer, Walker, Dornhaffer & Swick,* for appellant.

*Daniel L. R. Miller*, with him *McClure, Dart, Miller, & Kelleher,* for appellee.

OPINION BY HOFFMAN, J., June 24, 1975:

This case raises questions concerning the respective rights and duties in both assumpsit and trespass of a corporation and its employee-participants arising out of an executed retirement plan. The present state of the record, however, and the posture of the appeal compel a remand to the trial court and prevent us from considering the substantive merits involved.

The facts of record are not in dispute. On August 28, 1958, Skyline Industries, a proprietorship owned by Noel J. Poux, and four affiliated Skyline corporations, set up

a retirement plan for the benefit of certain Skyline employees. The number of employees covered by the plan does not appear of record. Plaintiff-appellee, an accountant employed by Skyline for many years, was both a participant and one of the three trustees of the plan. On April 10, 1959, the District Director of the Internal Revenue Service approved the plan as "qualified" within the then applicable provisions of the Code and Regulations issued pursuant thereto. See Internal Revenue Code §§401 and 402. At that time, a participant in a qualified plan was entitled to have his benefits taxed at capital gain rates if they were withdrawn in a lump sum within twelve months of the termination of employment.

In October, 1963, the proprietorship and the related corporations were consolidated into a Delaware corporation known as Skyline Industries, Inc. Skyline Industries was then acquired by Phillips Petroleum Corporation, and its name was subsequently changed to Phillips Products Company, Inc. Appellee remained an employee of the successor corporation until his retirement in September, 1968. On October 31, 1963, a duly authorized officer of Skyline Industries sent the following letter to Noel J. Poux, one of the three trustees of the Skyline Retirement Plan:

"Skyline Industries, Inc., agrees either to continue that certain Retirement Plan Agreement entered into August 25, 1958, . . . for a period of four (4) years from and after this date, or to provide Noel J. Poux, Elmer Lecompte and John G. Reis with the same benefits (before taxes) they would have received if said Agreement had been continued for such period."

Although appellee was one of the three original trustees, he never recived a copy of this letter or any other notice of appellant's intention to discontinue the plan as of October 31, 1967. At a date not appearing of record, appellee was replaced as a trustee and administration of the plan was transferred to Phillips, the parent corpora-

tion of Skyline Industries. Exactly how many partici-
pants remained in the plan as of October 31, 1963, is not
known. The trial court's opinion, however, states that
". . . most of the originally covered officers and employees
had left employment or had been transferred into existing
Phillips retirement plans. . . ." and that ". . . apparently
at that time only Poux, Reis and one Lecompte were still
in the plan—see letter of October 31, 1963 . . ."

Appellee retired in September, 1968, and applied for
the benefits due him under the plan. In accordance with
his belief that the plan was qualified, appellee requested
that the benefits be paid in a lump sum. Consequently,
appellee reported the benefits on his 1968 income tax
return as a capital gain. In December, 1969, however, the
Internal Revenue Service notified Phillips that effective
for the year 1964 and thereafter, the Skyline Retirement
Plan was not deemed a qualified plan. On July 10, 1972,
appellee was assessed additional taxes for the year 1968
in the amount of $4,058.88, plus interest charges. Because
the plan was not qualified in 1968, appellee's lump-sum
benefits were taxable as ordinary income rather than
capital gains.

Appellee did not learn of the existence of the October
31, 1963 letter from Skyline Industries until March, 1972.
On August 3, 1972, appellee instituted suit against ap-
pellant to recover the additional tax and interest he had
been required to pay. Initially, appellee's complaint con-
sisted only of a cause of action in trespass. Following the
filing of preliminary objections, appellee submitted an
amended complaint in two counts, the first in trespass and
the second in assumpsit. On February 15, 1974, appellant
filed a motion for judgment on the pleadings pursuant to
Rule 1034, Pa. R.C.P. The lower court did not pass on the
merits of appellee's contractual allegations, but held that
appellant's failure to notify appellee of its intention to
discontinue the plan constituted negligence. The lower
court then granted judgment on the pleadings to appellee

in the full amount claimed. We reverse and remand for trial.[1]

1. Appellee's assumpsit claim is grounded principally upon Section 15.1 of the plan, which states in pertinent part: "No amendment shall deprive any participant ... of any *vested interest* he may have hereunder ..." (Emphasis added). Appellee argues that because the plan was originally qualified, the tax advantages to be gained from participation in the plan was a "vested interest." Appellee then argues that the October 31, 1963 letter constituted an amendment of the plan which served to deprive him of his vested interest.

Appellant's counter-argument is basically that the only "vested interest" a participant could have was in the money contributed to the plan by the company. Appellant contends that the resolution must be found in the contract, *i.e.*, the plan itself. In support of its position, appellant makes three references to the plan: (1) There is nothing in the plan which explicitly guarantees a continued tax status. (2) Section 15.2 of the plan provides that "Company establishes Plan voluntarily and, although it intends to continue Plan, it shall be under no obligation to do so. Company reserves the right to terminate Plan at any time by giving fifteen days' written notice to Trustees." Thus, appellant argues that the plan was entirely voluntary, and if appellee had no vested interest in the plan's continuation at all, it could not have a vested interest in the plan's being continued with a certain tax status. (3) Section 18.1 of the plan provides: "The establishment of this Trust or any modification thereof shall not give any participant or other person any legal or equitable right against Company, its officers, directors, owners, stockholders, or Trustees not specifically provided for in this Agreement ..."

In its opinion, the lower court states that "[n]either counsel's nor the court's research has turned up any cases answering the question of whether a certain tax status is a vested interest that one can acquire under a pension plan." The court, while noting that "it might be desirable to establish some case law by this decision, or an appellate review thereof," did not decide the issue because it granted appellee judgment on the pleadings on the trespass count. In view of our decision to remand the case for trial, there is no necessity to discuss the merits, and we do not intimate any opinion as to the proper resolution of the assumpsit claim. Appellee is obviously free to pursue the issue at trial, and appellate review will be available at the appropriate time.

The lower court had the authority to grant judgment on the pleadings to appellee even though appellant was the moving party. See *Ruska v. Philadelphia Life Insurance Co.*, 412 Pa. 418, 195 A.2d 93 (1963); *Boron v. Smith,* 380 Pa. 98, 110 A.2d 169 (1955).[2] A motion for judgment on the pleadings, however, should be granted only in cases "which are so free from doubt that a trial would clearly be a fruitless exercise." *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa 373, 378, 224 A.2d 174 (1966). *See also Karns v. Tony Vitale Fireworks Corp.,* 436 Pa. 181, 259 A.2d 687 (1969); *Goldman v. McShain,* 432 Pa. 61, 247 A.2d 455 (1968). Although certain basic facts are not in dispute, the pleadings themselves cannot support a judgment for appellee on a negligence theory.

The lower court did not decide whether appellee had a "vested interest" in the tax status of the plan as a matter of contractual right. In effect, however, the court held that (1) appellee "has a substantial vested interest in the Skyline Retirement Plan . . ." and "in knowing the plan was no longer a permanent ongoing plan . . .";

---

2. Appellant claims that *Paulish v. Bakaitis,* 442 Pa. 434, 442-443, 275 A. 2d 318 (1971), casts some doubt upon the continued validity of this rule: "It is similarly unclear on what basis the court entered judgment for defendant Bakaitis, who had filed no motion for judgment, perhaps in the mistaken thought that her co-defendants' motion would automatically extend to her. A court is without power under either Rule 1037(c) or Rule 1034 to enter judgment on its own motion." *Ruska* and *Boron* held that judgment on the pleadings can be entered against the movant, which is precisely what occurred in the instant case. This was not the situation in *Paulish*. There, the lower court awarded judgment to a party who was *neither* the movant nor a party in opposition to the motion (in the sense of plaintiff and defendant). In *Ruska, Boron* and the present case, judgment was awarded to the party who opposed the motion. Without a more explicit statement from the Supreme Court, we cannot overturn the doctrine that judgment on the pleadings can be entered against the movant.

(2) appellant "had an implied obligation to notify those persons who would be affected by the company's decision to discontinue the plan" and (3) the failure to send notice constituted negligence. Although not stated, the court must have held *sub silentio* that appellant's negligence was the proximate cause of appellee's injuries. It must be remembered that the plan was in full force and effect at the time of appellee's retirement in September, 1968, despite the fact that appellant had previously stated its intention to discontinue the plan as of October 31, 1967, and that appellee was given all benefits to which he was entitled.

The elements of a cause of action for negligence are contained in Restatement of Torts, 2d, §281 (1965). "The actor is liable for an invasion of an interest of another, if: (a) the interest invaded is protected against unintentional invasion, and (b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and (c) the actor's conduct is a legal cause of the invasion, and (d) the other has not so conducted himself as to disable himself from bringing an action for such invasion." We can assume, for purposes of discussion only, that appellant's conduct fell below the standard of care that a reasonable man in the position of appellant would have exercised. We can also assume that appellee was not contributorily negligent. It is not at all clear, however, that the remaining subsections of §281 were satisfied.

It is questionable whether the pleadings show convincingly that appellant had an "interest" in the continuation of the retirement plan,[3] but even assuming that he

---

3. Given that appellee received the full benefits to which he was entitled under the plan, the only possible reason for his "interest" in knowing that the plan would be discontinued was the tax treatment to which the benefits were subject. The plan's continuation would be of no concern to appellee except for the fact that a non-permanent plan would not constitute a qualified plan

did, the pleadings are devoid of any proof of proximate cause. In Paragraph 6 of its complaint in trespass, appellee states: "Defendant . . . by letter dated October 31, 1963, agreed to continue the . . . Plan for a limited period of time which under the then current and presently current Regulations establishes that said Plan is not a permanent and continuing plan and, therefore, would no longer qualify as a qualified plan under the Internal Revenue Code . . ." Appellant answered: ". . . To the extent that Plaintiff's allegations in paragraph 6 are conclusions of law, they require no answer, and to the extent that such allegations are the opinions of the Plaintiff as to the meaning of the letter, Defendant denies such opinions and alleges on the contrary that the letter speaks for itself . . ." The pleadings, therefore, do not support the trial court's conclusion that "[t]he result of this letter was to *un*-qualify the plan as it violated existing Revenue Department rules in that a qualified plan must be a permanent and continuing retirement plan." The possibility that other reasons existed for the plan's disqualification was apparent to the trial court: "While not found in the pleadings, it was argued and not denied that the plan had become too discriminatory to be practical *or to comply with Revenue regulations* as most of the originally covered officers and employees had left employment or had been transferred into existing Phillips retirement plans." (Emphasis added). Such an allegation can be found in appellant's answer. It was improper to award judgment

---

and hence the proceeds would be taxable as ordinary income. On the basis of the pleadings alone appellee's argument would seem to be a restatement of his contract claim. It seems inconsistent for the lower court to hold that appellee has a substantial interest in the continuation of the plan, but refuse to decide that his interest had "vested" for purposes of interpreting the assumpsit claim. At trial, however, appellee might be able to prove that appellant was guilty of a business tort, or had breached a fiduciary duty. The pleadings themselves do not clearly evidence liability.

516

to appellee when the conduct complained of was not shown to have caused the resulting damages. On the state of this record, it is mere speculation to hold that the letter of October 31, 1963, in fact caused the plan's eventual disqualification. Appellee must prove proximate cause before he can recover.[4]

Order of the lower court is reversed, and the case remanded with instructions to proceed to trial.

---

4. Another difficulty with the lower court's order involves that amount of damages awarded. The lower court entered judgment for the additional taxes and interest appellee was required to pay. The court found negligence in the failure to notify appellee of the intention to discontinue the plan; the court did not hold that appellant was negligent in rendering the plan unqualified. The court's opinion states that "the failure to notify Reis . . . foreclosed any opportunity Reis . . . had of exploring the alternative 'same benefits' and adjusting their income tax consequences accordingly." It is certainly unclear that appellee would have been able to save the entire $4,058.88 and interest had he been notified of the October 31, 1963 letter.