## Gothier v. Regent Construction Co.

*Ronald M. Katzman, Thomas E. Brenner,* for plaintiffs.

*Gerald T. Sajer,* for defendant Regent Constr. Co., Inc.

*Harry R. Swift,* for defendant Fred Dallmeyer.

*Joseph R. Adamczyk, Jr.,* for defendant Craig Dallmeyer.

SHEELY, *J.,* January 24, 1983—On January 8, 1981, plaintiffs, Robert V. Gothier, Sr. (hereinafter Gothier) and Keystone Commercial Realty (hereinafter Keystone), brought actions in equity and assumpsit against defendants, Robert Goodling (hereinafter Goodling) and Craig Dallmeyer. Plaintiffs' first count, in equity, prayed for the court to void a transfer of real estate between defendants Goodling and Craig Dallmeyer. Plaintiffs' second count, in assumpsit, claimed that plaintiff Keystone was entitled to a $25,000 commission for services it performed for Goodling concerning the negotiation of an acceptable agreement to sell a mobile home park. Defendants filed preliminary objections to plaintiffs' complaint in the nature of a demurrer.

In our opinion and order of court dated October 22, 1981, and docketed to No. 1 Equity 1981, and captioned Robert V. Gothier, Sr., and Keystone Commercial Realty v. Robert Goodling and Craig Dallmeyer, this court sustained defendants' preliminary objections and gave plaintiffs leave to file an amended complaint. Plaintiffs did so, adding Fred Dallmeyer as a defendant and naming Regent Construction Co., Inc., (hereinafter Regent), the owner of the land in question, rather than Goodling as the named defendant.

Plaintiffs allege by their complaint, inter alia, that in May, 1980, Gothier, on behalf of Keystone, contacted Goodling, the president of, and a shareholder in, Regent, regarding the possible sale of the Regent Acres Mobile Home Park to Keystone's clients. It has been admitted that Goodling, at all times relevant to the instant complaint, had the authority to sell the Regent Acres Mobile Home Park.

Plaintiffs allege that negotiations were carried on during the summer of 1980, and that on two occasions a purchase was nearly consummated. Plaintiffs further allege that on October 1, 1980, Goodling suggested that Gothier attempt to form a joint venture to acquire the mobile home park and that Goodling told Gothier that he would have a right of first refusal to match any other offers made for the acquisition of the mobile home park, and that all such offers would be communicated to Gothier.

Gothier avers that he then accepted these terms and, in reliance on these terms, expended time and effort to obtain persons to enter into a joint venture with him to purchase the mobile home park. Gotheir contends that on or about October 23, 1980, on behalf of the joint venture, he delivered an Agreement of Sale for the purchase of the mobile home park to

Charles Stone, (hereinafter Stone), counsel for Regent, for review. (A copy is attached as Exhibit A to plaintiffs' complaint filed January 4, 1982.) Gothier further contends that on or about October 24, 1980, Stone telephoned Gothier and told him that Goodling accepted the agreement of sale but required an increase in the down payment. Gothier asserts that he agreed to this increase on behalf of himself and his nominees.

Gothier also alleges that on or about October 29, 1980, Goodling telephoned and told him that he would execute the agreement of sale on October 30, 1980. Gothier alleges that on October 30, 1980, Stone informed him that Goodling had, by agreement of sale that day, transferred his ownership interest in the mobile home park to defendant Craig Dallmeyer.

It is alleged by Gothier and admitted by defendant Craig Dallmeyer that Craig Dallmeyer was advised of the interests of Gothier and the other members of the joint venture by a letter dated October 31, 1980. (A copy is attached as Exhibit B to plaintiffs' complaint filed January 4, 1982.) Plaintiffs further allege that Craig Dallmeyer assigned his rights and interests in the mobile home park to defendant Fred Dallmeyer. On December 3, 1980, an agreement of sale for the mobile home park was recorded in York County, Pa., in Record Book 82-E, Page 541. The parties to the agreement were Fred H. Dallmeyer and Regent. (A copy is attached as Exhibit C to plaintiffs' complaint filed January 4, 1982.) Plaintiffs further aver that defendant Fred H. Dallmeyer was advised of the interests of Gothier and the other members of the joint venture prior to signing the agreement by Craig Dallmeyer and by his own attorneys, the firm of Anstine and Anstine, located in York, Pa., who represented both Dallmeyers during the transaction.

It is further alleged that the purchase offer made by Craig Dallmeyer to Regent was not communicated to Gothier, thus depriving him of the opportunity to exercise his right of first refusal; that as a result of the alleged breach of the October 1, 1980 agreement, Gothier has been deprived of a valuable economic opportunity; and that Keystone performed substantial services in attempting to market the mobile home park for which it has not received the $25,000 commission to which it is entitled.

## COUNT I—EQUITY

In Count I, the equity count, plaintiffs ask the court to void the transfer of the Regent Acres Mobile Home Park to defendant Fred H. Dallmeyer; to order that plaintiff Gothier be permitted an opportunity to exercise his right of first refusal; and to grant any further appropriate relief. All defendants have moved for judgment on the pleadings.

In ruling on a motion for judgment on the pleadings, a number of general principles should be kept in mind. "The purpose of the motion is to permit an over-all examination of the pleadings in the action, on application of either party, to determine whether judgment should be entered upon the pleadings prior to trial." 2 Goodrich-Amram 2d § 1034(a):1 at 394 (1976). It is in the nature of a final demurrer before trial and can be decided only upon the pleadings themselves and documents properly attached thereto. Other outside materials may not be considered: Bata v. Central-Penn National Bank of Philadelphia, 423 Pa. 373, 224 A. 2d 174 (1966), cert. denied, 386 U.S. 1007 (1967); Pisiechko v. Diaddorio, 230 Pa. Super. 295, 326 A. 2d 608 (1974); Bogojavlensky v. Logan, 181 Pa. Super. 312, 124 A. 2d 412 (1956). In this instance, the court must accept as true all allegations of fact made by Gothier

which are material and relevant even though those allegations might be denied by Regent and Dallmeyers. Additionally, the court must regard as untrue any allegations made by Regent and Dallmeyers which Gothier might have denied: London v. Kingsley, 368 Pa. 109, 81 A. 2d 870 (1951); Carey v. Lower Merion School District, 362 Pa. 310, 66 A. 2d 762 (1949). The court will not, however, accept as true, averments which can be readily determined to be false from an examination of the record: Poole v. Great American Insurance Company, 43 West. L.J. 169 (1961), aff'd, 407 Pa. 652, 182 A. 2d 509 (1962); Hershey v. Segro, 66 Lancaster L.R. 507 (1979); 2 Goodrich-Amram 2d §1034(b):1 at 414 (1976).

Judgment on the pleadings should only be entered in cases which are so clear and free from doubt that a trial would be a fruitless exercise: Goldman v. McShain, 432 Pa. 61, 247 A. 2d 455 (1968); Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776 (1951); Pennsylvania Gas & Water Company v. Kassab, 14 Pa. Commw. Ct. 564, 322 A. 2d 775 (1974). Judgment is refused where there are issues of fact: Miami National Bank v. Willens, 410 Pa. 505, 190 A. 2d 438 (1963). When material questions of fact as to alleged oral agreements are raised, the parties are entitled to a hearing on those questions. See Edelman v. Locker, 6 F.R.D. 272, 274-75 (E.D. Pa. 1946) and cases cited therein. However, when evidence as to an oral agreement is rendered inadmissible by statute or by rules of evidence, such potential evidence must be excluded from the court's consideration in determining whether to grant or deny the motion: 2 Goodrich-Amram 2d §1034(b):1 n. 48 at 415 (1976) citing Brown v. Buckner, 69 D. & C. 629 (1949); Lefkowitz v. Hummel Furniture Co., 26 Lehigh Co. L.J. 209 (1955).

Plaintiffs, by their complaint, in paragraphs 8, 9, and 19 raise the issue of an oral agreement. In paragraph 19 plaintiffs specifically state: "Pursuant to the oral agreement of October 1, 1980, Robert Gothier was entitled to a right of first refusal with regard to any offer obtained by Regent for the sale of the moible home park . . ." Regent, in its answer and new matter, paragraph 47, states: "The oral right of first refusal or right to match the offer of third parties violates the statute of frauds as an interest in real property and must be in writing and executed by Regent to be enforceable." Fred Dallmeyer, in his answer and new matter, paragraph 27, states: "The oral right of first refusal alleged in plaintiffs' complaint is unenforceable under the Statute of Frauds as an interest in real property." In response to Regent's and Fred Dallmeyer's contentions, plaintiffs stated: "Denied. This is a conclusion of law to which no response is necessary."

Here plaintiffs clearly state that this alleged right of first refusal is oral. Plaintiffs do not place into issue either the existence or the sufficiency of a writing, rather they state that defendants merely voice a conclusion of law to which no response is necessary. To prevent a judgment on the pleadings concerning the statute of frauds, plaintiff must file an adequate denial of the statute's applicability. We have carefully read the leading cases which deal with the necessary adequacy of a denial and believe that plaintiffs' denial is not adequate to necessitate a trial on this aspect of the case: Keil v. Good, 467 Pa. 317, 356 A. 2d 768 (1976); Blumer v. Dorfman, 447 Pa. 131, 289 A. 2d 463 (1972); Pierro v. Pierro, 438 Pa. 119, 264 A. 2d 692 (1970); Goldman v. McShain, 432 Pa. 61, 247 A. 2d 455 (1968); 2 Goodrich-Amram 2d §1034(b):1 at 95 (pocket part 1982) citing Nernberg v. Right Land Company, 6

Butler L.J. 190 (1977). For cases applying these rules to similar statutory defenses, see Wimbish v. School District of Penn Hills, 59 Pa. Commw. Ct. 620, 430 A. 2d 710 (1981); Frasier v. Greenblatt, 7 D. & C. 3d 779 (1978); Dettrey, O.B.O. K.A.P. v Keckler, 20 Adams L.J. 194 (1979). Thus the applicability of the statute of frauds to this agreement is an appropriate issue for judgment on the pleadings.

In our opinion and order of court dated October 22, 1981, docketed to No. 1 Equity 1981, and captioned Robert V. Gothier, Sr. and Keystone Commercial Realty v. Robert Goodling and Craig Dallmeyer, at pages 4 and 5, we stated: "However, we believe a claimed oral right of first refusal to sell real estate is analogous to an alleged oral contract to sell real estate and is subject to the Statute of Frauds."

The statute of frauds reads in pertinent part:

From and after April 10, 1772, *all* leases, estates, *interests* of freehold or term of years, or any uncertain interests of, *in* or out of any . . . *lands,* . . . made or *created by* . . . parol, and not put in writing and signed by the parties so making or creating the same, . . . *shall have the* force and *effect of* . . . *estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect,* any consideration for making any such parol . . . estates, or any former law or usage to the contrary notwithstanding; . . . and moreover, that no . . . estates or interests . . . of freehold, or any uncertain interest, *of, in, to or out of any* . . . *lands* . . ., shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, *unless it be by deed or note, in writing, signed by the party so assigning,* granting or surrendering the same. . . . 1772, March 21, 1 Sm. L. 389 §1, 33 P.S. §1

The statute of frauds prohibits the creation of interests in land by oral agreement. Its purpose is to prevent fraudulent claims of interests in land resting on alleged oral agreements and to decrease opportunities for fraud or perjury: Manley v. Manley, 238 Pa. Super. 296, 357 A. 2d 641 (1976) (allocatur refused); 16 P.L.E., Statute of Frauds, §21 (1959). "It is not a mere rule of evidence. It is a declaration of public policy." Holland Furnace Company v. Keystone Dehydrating Company, 151 Pa. Super. 495, 499, 30 A. 2d 872, 874 (1943). If a contract fails to meet the requirements of the Statute of Frauds, the alleged bargain will be deemed to be inoperative, Manley v. Manley, supra.

The statute of frauds applies to equitable interests: Garver v. McNulty, 39 Pa. 473 (1861); Wilson v. Clarke, 1 Watts & Serg. 554 (1841); Goucher v. Martin, 9 Watts 106 (1839). A writing signed by the parties is required, and even courts of equity, though dispensing with the form, firmly demand the substance: Brotman v. Brotman, 353 Pa. 570, 46 A. 2d 175 (1946). Both parties to an oral contract for the sale of an interest in land are presumed to know that either of them might take advantage of the statute of frauds and the vendor who avails himself of the right to assert the statute of frauds as a defense is guilty of no fraud cognizable by a court of equity. Where the vendor invokes the protection of the statute of frauds it acts to prevent the entry of a decree of specific performance against him: Haskell v. Heathcote, 363 Pa. 184, 69 A. 2d 71 (1949).

Thus, the primary question presently before us is whether a right of first refusal is an interest in land. When the leading cases addressing the various forms of options in land are read with a view toward the policy behind the statute of frauds, we believe it is clear that a right of first refusal is an interest in land even though a right of first refusal may be

distinguishable from a pure option in a technical sense: Gateway Trading Company, Inc. v. Children's Hospital of Pittsburgh, 438 Pa. 329, 265 A. 2d 115 (1970); Strasser v. Steck, 216 Pa. 577, 66 A. 87 (1907); Hennebont Company v. Kroger Company, 221 Pa. Super. Ct. 65, 289 A. 2d 229 (1972); Phoenixville, Valley Forge & Strafford Electric Railway Company's Appeal, 70 Pa. Super. 391 (1918); Kaim Account, 6 D. & C. 2d 475 (1955); Walsh v. Powell, 76 D. & C. 108 (1951).

Although the old case of Elder v. Robinson, 19 Pa. 364 (1852) states that a right of first refusal is merely a personal obligation, we believe this case has been implicitly overruled in Driebe v. Fort Penn Realty Co., 331 Pa. 314, 200 A. 62, 117 A.L.R. 1091 (1938) and because courts now use a reasonable time construction in dealing with options which do not explicitly state the time period for election to exercise the option: Detwiler v. Capone, 357 Pa. 495, 55 A. 2d 380 (1947); Smith & Fleck's Appeal, 69 Pa. 474 (1871). See also, for explanation of Justice Lowrie's role in Elder, Corson v. Mulvaney, 49 Pa. 88 (1865); Kerr v. Day, 14 Pa. 112 (1850). See also, for further interpretation, Richanabach v. Ruby, 271 P. 600 (Ore. 1928). We would also point out that oral options to purchase have been held not specifically enforceable: Dorsey v. Kline, 10 D. & C. 2d 440 (1957).

There are certain equities which will operate to take an oral contract for an interest in land out of the statute of frauds but these are equities of the most stringent sort: Redditt v. Horn, 361 Pa. 533, 64 A. 2d 809 (1949). (For example, possession and improvement of the property). We do not believe those equities exist in this instance: Klingensmith v. Klingensmith, 375 Pa. 178, 100 A. 2d 76 (1953). (Continuous and exclusive possession taken under

oral contract and improvements made which are not readily compensable in money).

Because plaintiffs' interest is an interest in land it is subject to the statute of frauds. Plaintiffs have shown no equities which would remove it from the operation of the statute of frauds. Therefore, the contract must be rendered inoperative and we find for defendants.

## ORDER OF COURT

And now, January 24, 1983, defendants' motions for judgment on the pleadings as to Count I, in equity, are sustained. The motions for judgment on the pleadings as to Count II, in assumpsit, are dismissed.